James A. MITCHELL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 92A03–9604–CR–121.

Court of Appeals of Indiana.

Jan. 26, 1998.

Rehearing Denied March 13, 1998.

Transfer Denied April 15, 1998.

Eugene C. Hollander, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

James A. Mitchell appeals his convictions following a jury trial for Robbery with a Deadly Weapon, a class B felony,[1] and Theft, a class D felony.[2] He raises four issues on appeal, which we restate as five:

I. Whether the trial court abused its discretion by admitting the pre-trial and in-court identification of Mitchell by the victim.

II. Whether the trial court abused its discretion by admitting evidence of Mitchell's prior convictions.

III. Whether Mitchell's twenty year sentence for Robbery with a Deadly Weapon is manifestly unreasonable.

IV. Whether Mitchell received ineffective assistance of counsel at trial.

V. Whether the Double Jeopardy Clause is violated by the trial court's failure to merge Mitchell's convictions for Robbery and Theft.

We affirm in part and reverse in part.

On July 1, 1995 at approximately 11:45 p.m., A.L. was the sole employee working at a Columbia City convenience store. A.L. watched a man drive up to an air compressor outside the store and put air in his tires. The lot outside the store was illuminated by floodlights, and A.L. had an unobstructed view of the man. A few minutes later, the man entered the store, pulled out a gun and a bag, pointed the gun at A.L., and demanded that she give him all of the large bills. A.L. and the man were face-to-face for one or two minutes, and they were about two feet

---

1. IND.CODE § 35–42–5–1 (1993).

2. IND.CODE § 35–43–4–2 (1993).

apart. After A.L. gave him the money, the man ordered her to leave the store and run.

A.L. ran to a nearby house and called the police. Over the phone, A.L. described the man who robbed the store. She indicated that he was approximately sixty years old and overweight, with glasses and gray hair. She also described his clothing, indicating that he was wearing blue jeans and a white t-shirt. A.L. described the man's car as a white, large, older model car, possibly a 1980 Cadillac.

At 11:51 p.m., a police dispatcher relayed the information given by A.L. to patrolling officers. At 11:58 p.m., the Indiana State Police dispatcher, having been notified of the robbery, relayed the same information over the state police radio. State Trooper Kent Roe heard the dispatch, and eventually saw a light-colored, older Ford LTD traveling eastbound on U.S. 30, away from Columbia City. At the time, Roe believed the LTD was white; however, the actual color of the car was tan. Roe pulled in behind the car and noticed that the driver of the car was an elderly white male. At 12:06 a.m., Roe pulled the car over, approximately fourteen miles east of Columbia City.

The driver of the LTD was Mitchell. As Roe approached the car, Mitchell exited the vehicle and walked towards his rear bumper and asked Roe if he had been speeding. Roe ordered him to put his hands on the trunk. A second state trooper arrived, and Mitchell was asked whether he had a weapon, to which he responded that he did not. Upon further investigation, Roe saw a brown paper bag at the base of the car's driver's seat which contained a hand gun holster. Roe found another bag shoved underneath the seat which contained a loaded hand gun. Roe then arrested Mitchell. Mitchell was wearing a blue jump suit. Mitchell's car was inventoried, and twenty-eight dollars was found in a brown paper bag under the floor mat on the driver's side. After a short delay, the troopers were advised to bring Mitchell to the Whitley County Jail.

Meanwhile, A.L. returned to the convenience store and gave a written statement to Columbia City police officer Doug Eber. In this statement, she described the robber as five feet, seven inches tall, and she described

his gun as a black revolver. A.L. was then told that a suspect had been apprehended and was asked to go to the Whitley County Jail, for what she believed to be a line-up or other identification process.

While in the jail lobby with her employer at approximately 2:00 a.m., A.L. observed Mitchell being walked across the jail lobby by an officer. Her employer asked A.L. whether Mitchell was the man who robbed her, and she indicated that he was. A lineup was not conducted that night because no other inmates were Mitchell's age.

## I.

### Identification Evidence

Mitchell contends that the trial court abused its discretion by admitting A.L.'s pretrial and in-court identification of him as the robber. Mitchell characterizes his confrontation with A.L., in the lobby of the Whitley County Jail, as one which was deliberately planned and executed by the police in an effort to improperly suggest to A.L. that Mitchell was the man who robbed the convenience store. Mitchell argues that the suggestiveness of the procedure employed by the police resulted in a misidentification and denied him due process.

The United States Supreme Court and the Indiana Supreme Court have both condemned the practice of conducting a one-on-one show-up because of its inherent suggestiveness. *Wethington v. State,* 560 N.E.2d 496, 501 (Ind.1990). In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the United States Supreme Court held that a show-up confrontation between a criminal defendant and a witness may deny a defendant due process of law under the Fourteenth Amendment. 388 U.S. at 301–02, 87 S.Ct. at 1972–73. Nonetheless, identification evidence gathered via a show-up procedure is not subject to a *per se* rule of exclusion. *Wethington,* 560 N.E.2d at 501. "Rather, the admissibility of the evidence turns on an evaluation of whether, under the totality of the circumstances, the confrontation was conducted 'in such a fashion as to lead the witness to make a mistaken identification.'" *Id.* (quoting *Dillard v.*

*State*, 257 Ind. 282, 274 N.E.2d 387, 389 (1971)).

■■■ The Indiana Supreme Court has identified a number of factors to be considered in determining whether a show-up is likely to lead to a misidentification. They include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the length of initial observation of the criminal, (3) lighting conditions, (4) distance between the witness and the criminal, (5) the witness's degree of attention, (6) the accuracy of the witness's prior description of the criminal, (7) the level of certainty demonstrated by the witness, and (8) any identifications of another person. *See James v. State*, 613 N.E.2d 15, 27 (Ind.1993); *Craig v. State*, 515 N.E.2d 862, 864 (Ind.1987). Also to be considered is the length of time between the commission of the crime and the show-up procedure because our supreme court has recognized "the value of permitting a witness to view a suspect while the image of the perpetrator is fresh in the witness's mind." *Wethington*, 560 N.E.2d at 501. Thus, a show-up will be viewed more favorably the closer it occurs to the commission of the crime. Finally, a show-up is not as offensive where a photo or corporeal lineup are impossible. *Id.*

Mitchell argues vigorously that his confrontation with A.L. was intentionally planned and executed by the police. We need not decide whether the show-up was intentional. Instead, we assume *arguendo* that Mitchell's contention is correct and examine, by looking to the totality of the circumstances, whether the show-up procedure was likely to result in A.L. incorrectly identifying Mitchell as the robber.

■■■ Most of the facts in this case support the conclusion that the show-up procedure was unlikely to result in mistaken identification. First, A.L. had significant opportunity to see the man who robbed the convenience store. She watched him with an unobstructed view for several minutes while he put air in the tires of his car. She testified that she could see his face. A.L. then observed the robber from a distance of two feet while he pointed a gun at her and robbed the store. This face-to-face confrontation lasted for at least one minute.

Second, the confrontation between Mitchell and A.L. occurred close enough to the commission of the crime such that the image of the perpetrator was likely to be fresh in A.L.'s mind. The show-up occurred at 2:00 a.m., approximately two hours and fifteen minutes after the robbery. The Indiana Supreme Court has approved of a show-up procedure where it was held several hours after commission of the crime. *See Samaniego v. State*, 553 N.E.2d 120, 123 (Ind.1990), *reh. denied.* In addition, police testified that a proper lineup could not be conducted at the time because there were no inmates in the Whitley County Jail who were Mitchell's age.

Although Mitchell argues that A.L.'s original description of the robber and his automobile differ significantly from Mitchell and his car, we find A.L.'s original description of the robber quite similar to Mitchell's actual characteristics. When A.L. first called the police, she indicated that the robber was approximately sixty years old and overweight, with glasses and balding gray hair. She also described his clothing as blue jeans and a white t-shirt and described his car as a white, large, older model car, possibly a 1980 Cadillac. She added in a later written statement, which was taken prior to having seen Mitchell, that the robber was approximately five feet, seven inches tall. Mitchell is a sixty-one year old man, he is five feet, seven inches tall, he weighs approximately 190 pounds, he has gray hair, and he wears glasses. At the time of his arrest, he was wearing a blue jump suit and was driving a tan, 1984 Ford LTD.

Despite the similarities between A.L.'s initial description and Mitchell's appearance, Mitchell emphasizes that A.L. first described the robber's car as white, and that his car is actually tan. We believe this contradiction to be insignificant for two reasons. First, Trooper Roe testified that when he first saw Mitchell's car he also believed it to be white. Second, and more importantly, the color of Mitchell's car is irrelevant to whether the show-up procedure employed by the police was likely to lead to a misidentification since Mitchell's car was not presented to A.L. for identification while she was at the police station.

Mitchell also notes that A.L.'s physical description of him was in error. First, A.L. described the robber as having balding gray hair. While Mitchell has gray hair, he is not balding. Again, we find this fact insignificant. A.L. testified at trial that she was referring to Mitchell's high forehead when she described the robber as balding. Second, Mitchell notes that A.L. described the robber's clothing as blue jeans and a white t-shirt, and Mitchell was arrested wearing a blue jump suit. Although this difference is more significant, we do not believe this one discrepancy is enough, when considering the totality of the circumstances, to overcome the other factors which support our holding that the show-up procedure was unlikely to result in a misidentification. Too, Mitchell had ample time to put on a jumper after the robbery. Accordingly, we hold that Mitchell's due process rights were not violated when the police walked him through the jail lobby. The trial court did not abuse its discretion by admitting A.L.'s pre-trial and in-court identification of Mitchell as the robber of the convenience store.[3]

## II.

### *Evidence of Prior Convictions*

Mitchell argues that the trial court abused its discretion by admitting evidence of his prior convictions. The State inquired about and Mitchell admitted that he had three prior convictions—a 1954 forgery conviction, a 1979 conviction for selling stolen merchandise in interstate commerce, and a 1980 conviction for receiving, buying, and concealing stolen property. Mitchell contends that this evidence was precluded by Ind.Evidence Rule 609(b) because ten years have elapsed since the dates of his convictions.

The State first asked about the 1954 forgery conviction, which Mitchell admitted. Mitchell's counsel failed to object to the introduction of this evidence. Failure to make a timely objection results in waiver of the alleged error. *Donaldson v. Indianapolis*

*Public Transp. Corp.*, 632 N.E.2d 1167, 1172 (Ind.Ct.App.1994).

Next, the State asked about the 1980 conviction for receiving, buying, and selling stolen property, which Mitchell once again admitted. After Mitchell's admission, his attorney objected as follows:

DEFENSE COUNSEL: Your Honor, I wish to object to further questions along this line unless the crimes involved, crimes of deception, and unless the jury be specifically instructed that prior criminal record has a very limited evidentiary value.

STATE: That doesn't sound like an objection, Your Honor.

DEFENSE COUNSEL: Well, I wish to object that these, that the crime of possession of stolen property is not a crime of deception and therefore is inadmissable. Character evidence.

COURT: I'll overrule your objection. It's, uh, I believe it's considered the same as theft which is a crime of deception.

Record at 550. Finally, the State asked Mitchell about his 1979 conviction for selling stolen merchandise in interstate commerce, and Mitchell admitted this conviction. Again, defense counsel failed to object.

Assuming *arguendo* that the above cited objection can be considered timely with respect to the 1979 and 1980 convictions, it is not a valid objection for the purpose of arguing on appeal that the convictions are inadmissable under Evid. R. 609(b). To preserve an error for review on appeal, the specific objection relied upon on appeal must have been stated in the trial court as a basis for the objection. *Owensby v. Lepper*, 666 N.E.2d 1251, 1254 (Ind.Ct.App.1996), *reh. denied*. Mitchell's objection to the introduction of this evidence at trial was not based on the length of time which had elapsed since the date of his convictions. Instead, Mitchell argued to the trial court that the convictions were not crimes of deception, and therefore they were not relevant as impeachment evi-

---

3. Mitchell also argues that another factor supporting a likely misidentification was that he was handcuffed while being walked through the jail lobby. The record is unclear as to whether Mitchell was in handcuffs at the time or as to whether A.L. noticed any handcuffs. Nonethe-

less, the fact that a defendant was wearing handcuffs at the time of a show-up procedure does not, in and of itself, make the procedure unduly suggestive. *Gray v. State*, 563 N.E.2d 108, 111 (Ind.1990), *reh. denied.*

dence. Mitchell cannot argue this evidentiary issue on appeal without having given the trial court the opportunity to evaluate his objection under Evid. R. 609(b).

## III.

### Sentence

Mitchell contends that his twenty year sentence for Robbery with a Deadly Weapon is manifestly unreasonable. A sentence which is authorized by statute will not be revised on appeal unless the sentence is manifestly unreasonable. Ind.Appellate Rule 17(B); *Birdsong v. State*, 685 N.E.2d 42, 48 (Ind.1997). Otherwise, sentencing is left to the sound discretion of the trial court. *Barany v. State*, 658 N.E.2d 60, 67 (Ind.1995).

Mitchell received the maximum possible sentence for Robbery with a Deadly Weapon.[4] He argues that the facts of his case do not warrant a maximum sentence. Mitchell notes that only thirty dollars was taken in the robbery, his hands and voice were shaking during the robbery, he had not been convicted of a crime since 1980, and he had been gainfully employed for twelve years prior to the commission of this crime.

In sentencing Mitchell, the trial court identified the following mitigating and aggravating circumstances:

... mitigating circumstances: 1) defendant's military enlistment; 2) defendant's college degree; and 3) defendant's consistent employment within the past 12 years. The Court finds the following aggravating circumstances: 1) defendant's prior criminal record, which includes six (6) prior felony convictions; 2) defendant's prior probation and parole revocations; and 3) defendant's use of aliases.

Record at 182. We note that a single aggravating factor is sufficient to support an enhanced sentence. *Barany*, 658 N.E.2d at 67. Here, the trial court found three aggravating circumstances. Thus, to the extent that the trial court included within the record a proper statement of reasons for selecting the maximum sentence, it did not err by enhancing Mitchell's sentence.

Where a trial court has found aggravating and mitigating circumstances, it must include within the record a statement of its reasons for selecting a sentence. *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986), *reh. denied* ). The trial court's statement of reasons must include the following:

(1) it must identify all of the *significant* mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) it must articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances.

*Id.* (Emphasis in original.) Mitchell argues that the court's sentencing statement fails with respect to the third element because the trial court failed to articulate how the aggravating factors outweighed the mitigating factors.

During the sentencing hearing, the trial court stated that "the aggravating circumstances ... far outweigh the mitigating circumstances in this case." Record at 640. This statement reflects that the trial court both considered and balanced the aggravating and mitigating circumstances in determining Mitchell's sentence. Sentencing orders with similar statements have been upheld by our supreme court. *See e.g., Crawley v. State*, 677 N.E.2d 520, 522 (Ind.1997); *Hammons*, 493 N.E.2d at 1255. We hold that Mitchell's twenty year sentence for Robbery with a Deadly Weapon was not manifestly unreasonable.

## IV.

### Ineffective Assistance of Counsel

Mitchell argues that he received ineffective assistance of counsel at trial. To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance fell below an objective

4. Robbery with a Deadly Weapon is a class B felony. Ind.Code § 35–42–5–1. The presumptive sentence for a class B felony is ten years, which may be enhanced by an additional ten years due to aggravating circumstances. Ind.Code § 35–50–2–5 (1993).

standard of reasonableness; and (2) but for counsel's deficient performance the result of the proceedings would have been different. *Fugate v. State,* 608 N.E.2d 1370, 1372 (Ind. 1993). Counsel is presumed competent and the defendant must present clear and convincing evidence to rebut this presumption. *Id.*

Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Bellmore v. State,* 602 N.E.2d 111, 123 (Ind.1992), *reh. denied* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Mitchell cites four instances of attorney error in support of his contention that he received ineffective assistance of counsel. First, as discussed in section II, *supra,* Mitchell contends that the trial court improperly admitted evidence of his past convictions. We held that Mitchell waived any error with respect to the admission of his past convictions by failing to raise proper and timely objections at trial. Mitchell argues as an alternative that his attorney was ineffective by failing to take steps, including raising proper and timely objections, to exclude this evidence. Even if the conviction evidence were inadmissable and counsel's performance could be deemed deficient by failing to object to its admission, Mitchell cannot show that but for his counsel's deficient performance in failing to object that he would not have been convicted.

Substantial independent evidence was presented at trial to support the conclusion that Mitchell robbed the convenience store. A.L. identified Mitchell, both prior to trial and in court, as the man who robbed her at gunpoint. She had sufficient opportunity to observe the robber's physical characteristics as she watched him put air in his car's tires and she was standing only two feet away from him for at least one minute while he robbed the store. Mitchell was pulled over and arrested fourteen miles from the convenience store approximately twenty minutes after the commission of the crime. He had been driving away from Columbia City, the scene of the crime. Mitchell was carrying a gun simi-

lar to the one described by A.L. Mitchell's car was similar to the robber's car as described by A.L. Mitchell's physical description matched the description initially given by A.L. Finally, the police recovered twenty-eight dollars from Mitchell's car, which was the approximate amount stolen from the convenience store.

Although the introduction of Mitchell's criminal history was undoubtedly prejudicial, Mitchell cannot show that but for its introduction he would not have been convicted. Thus, his claim that he was denied due process as a result of his counsel's failure to object to its admission must fail.

Next, Mitchell contends that his counsel was deficient because he failed to make a motion for a change of judge. Prior to trial, Mitchell filed a *pro se* motion for a change of venue. During the course of arguing the motion, the following exchange took place between Mitchell and the judge:

MR. MITCHELL: I have seen this Court here on other motions, uh, I had a motion before to get a reduced bail which I felt was a very reasonable motion, since bond is pretty darn high for me, uh, and I have never tried to escape or anything like that ever. Been confined in a minimum security institution, you know, and I saw you, Your Honor, when it came to that, whether or not you should grant that motion, you looked at [the prosecutor] and he said, like that, and . . .

COURT: Well, that's just not true, sir.

MR. MITCHELL: . . . you denied the motion.

COURT: That is a lie.

MR. MITCHELL: That is not a lie. That is not . . .

COURT: I did not look . . .

MR. MITCHELL: . . . a lie, sir.

COURT: . . . at this man . . .

MR. MITCHELL: If you are not aware of it, you're not aware of it, but, that is not a lie. I am not telling a lie anywhere in here.

Record at 314–15. Mitchell contends that this exchange demonstrates the judge's bias against him and that his trial counsel was ineffective for failing to request a change of

judge after this exchange took place. We disagree.

 Even if Mitchell's attorney had filed a motion for a change of judge, the trial court was not obligated to grant the motion. We presume that a judge is unbiased and unprejudiced. *Kail v. State*, 528 N.E.2d 799, 804 (Ind.Ct.App.1988), *trans. denied.* In order to overcome this presumption, the moving party must establish that the trial judge has a personal prejudice concerning one of the parties. *Id.* Bias or prejudice which would warrant a reversal exists only where the judge has expressed an opinion on the issue of guilt or innocence. *Id.* The judge did not express an opinion on Mitchell's guilt or innocence by indicating that Mitchell's statement was a lie. Thus, the judge's comment did not require that he recuse himself. *Id. See also Jeffers v. State*, 485 N.E.2d 81, 87 (Ind.1985) ("A strained relationship between a judge and a criminal defendant does not in itself constitute grounds for a change of judge.").

Mitchell also contends that his attorney was ineffective for failing to file a motion to suppress evidence obtained from the defendant's person and the defendant's car. He argues that the police did not have probable cause to arrest him nor to search his car, and the evidence obtained as a result thereof was inadmissable.

Prior to stopping and arresting Mitchell, Trooper Roe received a radio dispatch which indicated that an armed robbery had just occurred at a convenience store in Columbia City. The dispatcher described the robber as an elderly white male and indicated that he was driving a white, older, Ford LTD.[5] From the dispatch, Trooper Roe knew that the suspected robber used a handgun and that the suspect vehicle was headed towards Fort Wayne. Mitchell, his car, and his bearings matched this description.

 "Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question." *Sears v. State*, 668 N.E.2d 662, 667 (Ind.1996). In applying this rule of law, our supreme court has held that probable cause existed to arrest a person under factual circumstances similar to the present case. In *Underwood v. State*, 644 N.E.2d 108 (Ind.1994), the police received a description of the defendant, who had just committed several robberies, and the general location where he might be found. *Id.* at 110. When they found the defendant in the identified area, he attempted to evade the police, but stopped when confronted by an armed officer. The court held that probable cause existed under these facts to arrest the defendant. *Id.* In *Samaniego v. State*, 553 N.E.2d 120 (Ind.1990), *reh. denied,* the defendant was arrested one hour after the commission of his crime while sitting in his truck. The police arrested him based upon witness descriptions of him and his truck. The Indiana Supreme Court held that probable cause existed for his arrest. *Id.* at 123.

 The facts of the present case are sufficiently similar to those in *Underwood* and *Samaniego* to support our holding that the police had probable cause to arrest Mitchell based upon the description they received of him and his car. The police were also justified in searching Mitchell's car incident to his lawful arrest. *See Jackson v. State*, 597 N.E.2d 950, 957 (Ind.1992), *reh. denied* (quoting *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981)) ("[W]hen a policeman has made a lawful custodial arrest, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). Because the police had probable cause to arrest Mitchell and search his car, Mitchell's counsel was not ineffective for failing to file a motion to suppress the evidence obtained via the arrest and search.

 Finally, Mitchell argues that his attorney was ineffective for failing to request that the trial court admonish the jury or provide a limiting instruction after inadmissable evidence was introduced. It was re-

---

5. A.L. described the robber's vehicle as possibly being a Cadillac. After the initial dispatch describing the suspect and his car, Officer Mike Peterson observed a white LTD traveling east-bound, away from Columbia City, and being driven by a gray-haired individual. State Trooper Roe received this updated information.

vealed at trial that the Indiana license plate on Mitchell's car was stolen from another car. Mitchell's attorney objected to the introduction of this information, and the court sustained the objection and struck the testimony from the record. However, Mitchell's attorney failed to request that the trial court admonish the jury or provide a limiting instruction, and Mitchell now contends that his attorney's failure to do so magnified the prejudice caused by the jury hearing about the stolen plate. We conclude that Mitchell is unable to show that but for his attorney's failure to request an admonishment or limiting instruction, he would not have been convicted. As discussed above, the State presented substantial independent evidence that Mitchell robbed the convenience store.

## V.

### Double Jeopardy

Finally, Mitchell argues, and the State concedes, that his Theft conviction should have merged with his Robbery conviction since both convictions arose from the same factual situation, the taking of twenty-eight dollars from the convenience store. Mitchell argues that failure to merge these convictions violates the Double Jeopardy Clause. We agree.

The federal Double Jeopardy Clause protects criminal defendants from, among other things, multiple punishments for the same offense. *Games v. State*, 684 N.E.2d 466, 473 (Ind.1997). The sole purpose of the Double Jeopardy Clause in this context is "to ensure that a court imposes no more punishment on a defendant than the legislature intended." *Id.* at 474.

The Indiana Supreme Court recently described in *Games* the two-part test which is to be applied in determining whether multiple punishments may be imposed in a single proceeding. We must first examine legislative intent. *Id.* If it is clear that the legislature intended multiple punishment for the same offense, double jeopardy is not violated

and further inquiry into the statutory elements of the crimes is not required. *Id.* However, where legislative intent is not clear, we apply the "same elements" test to the statutes as a means of discerning whether the legislature intended to impose multiple punishments. *Id.* at 475. In *Games*, the supreme court recited the "same elements" test: " . . . where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)).

Here, the Robbery and Theft statutes do not, on their face, indicate an intent by the legislature to impose multiple punishments for the same offense.[6] Thus, we must review their language under the "same elements" test. In order to convict a person of Robbery, the State must prove that the person (1) knowingly or intentionally; (2) took property from another person; (3) by using or threatening the use of force on any person, or by putting any person in fear. IC 35–42–5–1. A conviction for Theft requires the State to prove that a person (1) knowingly or intentionally; (2) exerted unauthorized control over the property of another person with the intent to deprive the other person of any part of its use or value. IND.CODE § 35–43–4–2. In reviewing these elements, it is clear that Theft is a lesser-included offense of Robbery. In order for the State to prove that a person is guilty of Robbery, it must, in effect, first prove that the defendant committed Theft. It must then prove the additional element that the defendant used force, used the threat of force, or placed a person in fear. The crime of Robbery contains an element which the crime of Theft does not, but Theft does not contain an element which is not contained in the Robbery statute. Accord-

---

**6.** In *Games,* the Indiana Supreme Court cited *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), as an example of statutory language exhibiting legislative intent. *Games,* 684 N.E.2d at 474, n. 9. In *Hunter,* the defendant was convicted of armed robbery and "armed criminal action." *Id.* The "armed criminal ac-

tion" statute specifically provided that "[t]he punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law...." *Id.* (citing MO.REV.STAT. § 559.225). Indiana's Robbery and Theft statutes contain no similar language. IND.CODE § 35–42–5–1 and IND.CODE § 35–43–4–2.

ingly, under the "same elements" test, we must hold that the legislature did not intend for a defendant to be punished under both the Robbery and Theft statutes for the same offense. We reverse Mitchell's conviction for Theft.

Affirmed in part and reversed in part.

GARRARD and FRIEDLANDER, JJ., concur.