**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Nov 19 2013, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MORGAN GOVAN**
Westville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MORGAN GOVAN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1302-PC-91 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Fran C. Gull, Judge
Cause No. 02D06-1010-PC-97

**November 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Petitioner, Morgan Govan (Govan), appeals the post-conviction court's

Order denying his petition for post-conviction relief.

We affirm.

## ISSUES

Govan raises five issues on appeal, which we consolidate and restate as the

following three issues:

(1) Whether Govan's trial counsel provided ineffective assistance of counsel;

(2) Whether Govan's appellate counsel provided ineffective assistance of counsel;

and

(3) Whether the post-conviction court abused its discretion by ordering the cause to

be submitted by affidavit.

## FACTS AND PROCEDURAL HISTORY

We described the factual background in the direct appeal of this case as follows:

> In 2008, Govan and A.H. were involved in an on-again, off-again relationship that spanned thirteen years. They had an open relationship, which meant that they could "associate with other [people] and still be together." A.H. lived in an apartment in Allen County. Govan lived with his mother but stayed most nights with A.H. and kept some of his belongings there.

> When A.H. arrived at her apartment in the early morning hours of September 11, 2008, Govan asked her if she had cheated on him. A.H., who had in fact cheated on him, said no. However, Govan, sensing otherwise, became angry because A.H. had lied to him. According to A.H.'s trial testimony, she realized that she had emotionally hurt Govan and decided that

2

"[she] wanted him to hurt [her]." So, A.H. instructed Govan to tie her up. Govan had recently undergone shoulder surgery and had limited mobility with his dominant hand because that arm was in a brace and wrapped to his torso. As such, A.H. and Govan, as a team, ripped bed sheets into strips. Govan then instructed A.H., who was now naked, how to tie the strips around her wrists. Govan then tied A.H.'s wrists and ankles together. At this point, A.H. was "hog tied" on the floor.

After a period of time, Govan untied A.H., and she moved to the bed, where she was then tied to the bed frame. Govan then started poking her with a knife that he had heated with a lighter. According to A.H.'s trial testimony, this "hurt." Govan did this "[b]ecause he wanted to hurt [her]." Govan then tried to "brand" A.H. with his initials. The State asked A.H. on direct examination if she agreed that Govan could brand her, and the following exchange occurred:

Q And when it came to the knife, was this something that you had agreed that [he] could brand his initials on your butt with a knife?
A I told him to hurt me, because I know I realized I hurt him.
Q Did that include the knife though?
A Yes.
Q And did it get to the point where, did it ever get to the point with the knife that you no longer wanted him to do it?
A Yes. I told him to stop.
Q And did he stop when you told him to stop?
A Yes.
Q While the act was occurring, what did you do because of the pain?
A I just put my head down in the pillow.

However, it was pointed out on cross-examination that A.H. gave a slightly different version of the branding incident in her pre-trial deposition. Specifically, when she was asked during her deposition whether the knife was applied to her skin with her consent, A.H. replied, "[T]o an extent, [though Govan] took it a little too far." A.H. then explained that what she meant by that response was that she "didn't realize what he was going to do was ... brand me with a hot knife," though she knew something painful in general was going to occur.

A.H. was tied to the bed for approximately ten or fifteen minutes, and during this period of time, her hands went numb. When she relayed this to Govan, he released her. Though the timing is unclear, Govan also hit A.H. on her back with an extension cord, which left a mark. According to A.H.,

she and Govan had sex at some point on September 11.  [].  A.H. explained that these activities were a "turn on" to her.

In any event, after being released from the bed, A.H. went into the closet "on [her][own] free will" and locked the door from the inside.  After A.H. went inside the closet, Govan pushed a couch in front of the door.  A.H. tried to hang herself in the closet, but the clothing rod was too low.  Eventually, A.H. went to sleep because she was exhausted.  After a couple of hours, A.H. emerged from the closet to use the restroom.  In an attempt to get away from Govan, she told him that she needed to go to work to pick up her paycheck, though payday was the following day.  Govan accompanied her but stayed in the car.  Once A.H. was inside her place of employment, she locked the door.  Her co-worker, Myra Neireiter, described A.H. as "shaken, very nervous, and distraught."  A.H. told Neireiter that Govan had "whipped her and tied her up."  A.H. lifted up her shirt to reveal her injuries.  A.H. then called 911.  According to the 911 call, which was played for the jury during trial, she told the dispatcher that she and Govan had been getting into it over the past two days, Govan had beat her with a cord, she wanted the police to pick him up, and she wanted to press charges.  She told the dispatcher that she was not going outside the building to talk to the police until Govan was detained.  When the police arrived at A.H.'s work, she told them that Govan had branded her with a hot knife and struck her with an extension cord.  She, however, did not tell the police that she had asked Govan to do these things to her because she felt that she deserved it for lying to him about cheating on him.  The police later went to A.H.'s apartment to collect evidence and take pictures of her.

The following day, the police videotaped an interview with Govan.  During the interview, Govan said that on September 11, 2008, A.H. came home and, after first lying about being with another man, admitted to being with another man.  Govan said he became upset because A.H. had lied to him.  He explained that what followed was not heated, but he probably took it too far.  Govan said he had A.H. tie sheets to a bed and was yelling at her and instructing her how to do things.  He also admitted to hitting A.H. with a belt-like object on her back, "beat[ing]" her, and making her go into a closet for fifteen or twenty minutes.  He said he went on a "rampage," which scared the "shi* out of [A.H.]."  This all came about, he explained, because he saw marks on A.H., and if another man was going to beat on A.H., he was going to do so, too.  On multiple occasions in the interview, Govan denied having sex with A.H. on September 11, 2008.  Near the end of the interview, when Govan expressed uncertainty about A.H.'s allegations against him, he said to the detectives, "Now she's saying battery [for the belt], okay, I'm guilty for

4

that." But he quickly said it was not like that, because they typically do kinky things like that during sex. Govan also said they often role-play during sex.

The State charged Govan with Class B felony criminal confinement[, Ind. Code § 35-42-3-6], Class C felony battery (deadly weapon: knife)[, I.C. § 35-42-2-1(a)(3)], and Class A misdemeanor battery (bodily injury: physical pain and/or visible injury)[, I.C. § 35-42-2-1(a)(1)(A)]. The State later added a count alleging that Govan was a habitual offender[, I.C. § 35-50-2-8]. A jury trial was held in November 2008. As noted above, A.H. testified at trial, and Govan's videotaped interview and A.H.'s 911 call were admitted into evidence. A.H. testified that she did not want to be there and she still had feelings for Govan. At the close of the evidence, the defense moved for judgment on the evidence for the criminal confinement charge, which the trial court granted. During closing arguments, the State argued that consent is not a defense to battery and specifically argued, "[I]t is not a defense to battery that someone cheats on you." The State reasoned that Govan battered A.H. because he was mad that she had lied to him and that if another man had beat her, he was going to do so, too. []. The jury found Govan guilty of both [C]ounts of battery and also found him to be a habitual offender. The trial court sentenced Govan to four years for the Class C felony battery and one year for the Class A misdemeanor battery, to be served concurrently, and enhanced the sentence by four years for the habitual offender adjudication.

*Govan v. State*, 913 N.E.2d 237, 238-41 (Ind. Ct. App. 2009), *trans. denied*. (internal citations omitted).

Govan appealed, challenging the sufficiency of the evidence, and arguing that A.H.'s consent to his "sadomasochistic sexual practices" negated his culpability. *Id*. at 241. We concluded that pursuant to *Helton v. State*, 624 N.E.2d 499 (Ind. Ct. App. 1993), *trans. denied*, *cert. denied*, 520 U.S. 1119 (1997), "A.H.'s consent is not a defense to the crimes because Govan's actions involved a deadly weapon." *Govan* at 913 N.E.2d at 242. Further, we determined that the jury "was free to conclude that A.H. did not consent to be beaten with the extension cord." *Id*. at 243. As a result, we affirmed Govan's convictions

5

for both Class C felony and Class A misdemeanor battery, and his habitual offender adjudication.

On October 25, 2010, Govan filed a petition for post-conviction relief. On November 30, 2010, the State filed its answer. On March 28, 2012, the State filed a motion to require Govan to submit his case by affidavit, which the post-conviction court granted. On January 31, 2012, the post-conviction court issued its Order denying post-conviction relief.

Govan now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*. A petitioner must establish his claims to post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5.

Appeal from a denial of post-conviction relief is equivalent to an appeal from a negative judgment. *Turner*, 974 N.E.2d at 581. We will therefore not reverse unless the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached

6

by the post-conviction court. *Id.* Where the post-conviction court has entered findings of fact and conclusions of law, we accept the findings of fact unless clearly erroneous, but accord no deference for conclusions of law. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.* at 581-82. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## II. *Ineffective Assistance of Trial Counsel*

Govan argues that he was denied the effective assistance of both trial and appellate counsel as pertaining to his conviction for Class C felony battery. Govan's attorney acted as both trial and appellate counsel. The post-conviction court concluded that Govan had failed to establish ineffective assistance of trial and appellate counsel.

Ineffective assistance of counsel claims are subject to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel's performance must fall below an objective standard of reasonableness in light of professional norms, and must prejudice the defendant. *Johnson v. State*, 832 N.E.2d 985, 996-97 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Regarding the first prong, there is a strong presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012), *reh'g denied*. Trial counsel has wide latitude in selecting trial strategy and tactics, which will be subjected to deferential review. *Id.* "[A] petitioner must offer strong and convincing

7

evidence to overcome this presumption." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001). Prejudice is measured by a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. *Ward*, 969 N.E.2d at 51. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *See Timberlake, v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied*, *cert. denied*, 537 U.S. 839 (2002).

## A. *Jury Instructions*

Govan first argues that his trial counsel was ineffective for failing to request jury instructions on 1) consent as a defense to battery; 2) mistake of fact; and 3) a lesser included defense instruction on criminal recklessness. In our review of the propriety of a trial court's decision to give an instruction, we look to see whether the instruction correctly states the law; whether the record contains evidence to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions which were given. *Montano v. State*, 649 N.E.2d 1053, 1058 (Ind. Ct. App. 1995), *trans. denied*.

Govan contends that this court's decision in his direct appeal was "a direct invasion within the providence of the jury" and a consent defense was, in fact, available. (Appellant's Br. p. 12). In *Govan*, we relied upon *Jaske v. State*, 539 N.E.2d 14 (Ind. 1989) and *Helton*, to reject Govan's claim that A.H.'s consent to his sadomasochistic sex practices constituted a defense. *Govan*, 913 N.E.2d at 241-42. While consent is not an element of battery, it may provide a defense in certain circumstances, such as athletic

8

contests. *Id*. However, it is not a defense when a deadly weapon is used, nor is it a defense "[w]here it is against public policy to permit the conduct or resulting harm even though it is consented to, as where there are no sexual overtones and the battery is a severe one which involves a breach of the public peace, as well as, an invasion of the victim's physical security." *Id*. (quoting from *Helton*, 624 N.E.2d at 514). Because Govan used a deadly weapon, a knife, to batter A.H., consent was not available as a defense. *See Govan*, 913 N.E.2d at 242. The underlying assumption for Govan's argument – that consent was a defense to his battery of A.H. – has already been decided adversely to him on direct appeal. Any jury instruction on consent would have misstated the law and been rejected by the trial court. Therefore, trial counsel was not ineffective for failing to tender an instruction on consent.

Next, Govan claims that a mistake of fact instruction was applicable based upon his misunderstanding on the scope of A.H.'s consent. Consent or the lack thereof is a fact. *Tyson v. State*, 619 N.E.2d 276, 306 (Ind. Ct. App. 1993), *trans. denied*. A mistake of fact defense requires the defendant to convince the court that his mistake was 1) honest and reasonable; 2) about a matter of fact; and 3) the mistake negated the culpability required to commit the crime. *Payne v. State*, 854 N.E.2d 7, 20 (Ind. Ct. App. 2006). For Govan to be mistaken about A.H.'s consent, her consent must have been a defense to the battery, which it was not. Thus, the trial court would have rejected the instruction if tendered. Therefore, trial counsel was not ineffective for failing to tender an instruction on mistake of fact.

Finally, he alleges trial counsel's ineffectiveness due to the failure to request a lesser included offense instruction for criminal recklessness since he was entitled to "any instruction that could reduce the penalty statute to a lesser offense." (Appellant's Br. p. 14). We are mindful that "[a] tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind.1998). Criminal recklessness is not an inherently included lesser offense of battery because each requires proof of an element that the other does not – battery requires proof of touching and criminal recklessness requires proof of substantial risk of bodily injury. *Sanders v. State*, 704 N.E.2d 119, 120 (Ind. 1999). Criminal recklessness may, however, be factually included in the crime of battery if the charging instrument alleges facts that "reflect a substantial risk of bodily injury" and "show that the touching was done with a disregard of the harm that might occur." *Id*. at 121-22. Though alleging an intentional touching with a deadly weapon, the Information contained no allegation that Govan "disregarded the consequences of his actions." *Id*. at 122. We therefore conclude that Govan has not overcome the presumption that trial "counsel provided adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ward*, 969 N.E.2d at 51. By failing to establish the trial court would have tendered any of these jury instructions, Govan cannot prevail on his ineffective assistance claim.

B. *Prosecutorial Misconduct*

Govan also alleges that trial counsel was deficient for failing to object to three purported instances of prosecutorial misconduct. It is well established that in order to prevail on a claim of ineffective assistance due to the failure to object, a petitioner for post-conviction relief must show an objection would have been sustained if made. *Pruitt v. State*, 903 N.E.2d 899, 928 (Ind. 2009), *reh'g denied*. Further, to prevail on a claim of ineffective assistance due to prosecutorial misconduct, a post-conviction petitioner must show that prosecutorial misconduct in fact occurred. *Id*. A court applies a two-step test in deciding claims of prosecutorial misconduct. *Gasaway v. State*, 547 N.E.2d 898, 901 (Ind. Ct. App. 1989), *trans. denied*. First, the court must determine whether the prosecutor in fact engaged in misconduct. *Id*. This determination is made by referencing case law and the Rules of Professional Conduct. *Id*. Second, the court must consider whether the misconduct, under the totality of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Id*. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Baer v. State*, 866 N.E.2d 752, 756 (Ind. 2007), *cert. denied*, 552 U.S. 1313 (2008).

First, Govan contends that the prosecutor committed misconduct by arguing that "If there's no rough sex, there is no defense to the battery, and in Indiana consent is not even a defense to battery." (Transcript p. 205). He argues that the prosecutor misstated the law and that trial counsel's failure to object prejudiced him because the trial court was not permitted to inform the jury that consent provided a defense to battery. We disagree. Even

11

if the prosecutor misstated the law, the trial court specifically instructed the jury on the applicable law. Govan claims that the prosecutor's comments somehow implied that "it did not shoulder the burden of disproving consent;" however, consent was not an available defense to Class C felony battery pursuant to *Jaske* and *Helton*. *See Govan*, 913 N.E.2d at 241-42. Therefore, no prosecutorial misconduct occurred. *See Nevel v. State*, 818 N.E.2d 1, 6 (Ind. Ct. App. 2004).

Second, Govan argues that the prosecutor committed misconduct by making "eight (8) references suggesting that the evidence implying confinement were means to convict [Govan] of the remaining two (2) [C]ounts of battery." (Appellant's Br. p. 17). He insists that the fact that A.H. was hog-tied and "held against her will" was impermissibly used by the State "as the means to convict him of battery" given that he was acquitted of the criminal confinement charge by a directed verdict. (Appellant's Br. p. 17). However, the post-conviction court concluded that "[n]o passages in the trial record appear to show that the prosecutor engaged in any such argument," and that there was "no indication that [Govan's] convictions on the two charges of battery were affected by the charge of criminal confinement." (Appellant's Br. pp. 31, 35).[1]

Govan does not support his argument with citations to the parts of the record on which he relies, as required by Indiana Appellate Rule 46(A)(8)(a). We further note that the trial court instructed the jury prior to closing arguments that the criminal confinement

---

[1] Govan failed to include a copy of the Order denying post-conviction relief in his Appendices. *See* Ind. App.R. 50(A)(2)(b).

charge "should not enter into your deliberations in any way regarding the other two [C]ounts of battery." (Tr. pp. 203-04). In light of the foregoing, we are unable to conclude that the prosecutor committed misconduct, and therefore Govan's trial counsel was not ineffective for failing to object.

Finally, Govan argues that the prosecutor submitted false evidence at trial. Specifically, Govan contends that the discrepancy between A.H.'s deposition testimony, in which she stated that Govan used a heated knife on her and later tied her up, and her trial testimony, in which she stated that Govan tied her up, untied her, and later attempted to brand her with the heated knife, constitutes false testimony that the State knowingly put before the jury. "[T]he prosecution may not stand mute while testimony known to be false is received into evidence. False evidence, when it appears, must not go uncorrected." *Coleman v. State*, 946 N.E.2d 1160, 1167 (Ind. 2011). However, contradictory or inconsistent testimony by a witness does not constitute perjury. *Wallace v. State*, 474 N.E.2d 1006, 1008 (Ind. 1985). The jury, in their function as the finder of fact, is charged with resolving the discrepancy. *See id*. Here, Govan has shown only that A.H.'s trial testimony is inconsistent, not that it is false. His claim that trial counsel was ineffective for failing to object to that testimony accordingly fails. In sum, without misconduct, not only did the prosecutor's argument not place Govan in a position of grave peril, but we also cannot say that an objection from trial counsel would have led to a different result. Thus, Govan has not shown that the evidence is without conflict and leads unerringly and

13

unmistakably to a conclusion opposite that reached by the post-conviction court as to the assistance of his trial counsel.

## C. *Judicial Bias*

Govan next claims that his trial counsel was ineffective for failing to object to comments from the trial court outside the presence of the jury. Specifically, Govan contends that the trial court's remarks violated judicial cannons and deprived him of the right to a trial before a fair and impartial tribunal. The law presumes that a judge is unbiased and unprejudiced. *Everling v. State*, 929 N.E.2d 1281, 1287 (Ind. 2010). To rebut this presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. *Id*. Bias or prejudice that would warrant reversal exists only where the judge has expressed an opinion on the issue of guilt or innocence. *Mitchell v. State*, 690 N.E.2d 1200, 1208 (Ind. Ct. App. 1998), *trans. denied*.

After A.H. recanted her testimony during trial, a side bar was held to discuss the State's plans to impeach A.H. with witnesses who would testify to statements she made after informing the police about Govan. The trial court stated:

> And I'm sorry, I understand exactly what happened. I understand this man beat the hell out of her and now she's changed her mind that she doesn't want to prosecute him and she doesn't want him to go to jail. But in the meantime, at some point we've all got to decide that we can't protect everybody from themselves.

(Tr. p. 131-32).

Even assuming that the trial court's comments somehow constituted a statement on his guilt, Govan has not demonstrated prejudice. It is undisputed that the trial court's

14

comments were made outside the presence of the jury. Comments made outside the presence of the jury do not risk influencing the jurors. *See Peek v. State*, 454 N.E.2d 450, 456 (Ind. Ct. App. 1983). We therefore conclude that Govan has not met his burden to demonstrate ineffective assistance based upon trial counsel's failure to object to the trial court's comments.

### III. *Ineffective Assistance of Appellate Counsel*

### A. *Standard*

Govan also alleges that his appellate counsel failed to render effective assistance. The standard for determining the effectiveness of assistance of counsel is the same for both trial and appellate counsel. *Fisher v. State*, 810 N.E.2d 674, 676 (Ind. 2004). Our supreme court has identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95, *reh'g denied*, *cert. denied*, 525 U.S. 1021 (1998). Here, the majority of Govan's claims fall into the waiver of issues category.

### B. *Failure to Raise Issues*

### 1. *Vagueness*

Govan first argues that his appellate counsel was ineffective because he failed to challenge the battery statute, Ind. Code § 35-42-2-1(A)(3), as void for vagueness. Specifically, he contends that the statute is void-for-vagueness since a touching cannot be rude, insolent, or angry when done with the other party's consent. The State argues that

appellate counsel was not ineffective for challenging the statute because "no existing authority would have supported such an argument." (Appellee's Br. p. 17).

There is the "strongest presumption" of effective appellate advocacy in the face of allegations of failure to raise a claim. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 260 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002). In evaluating whether appellate counsel was ineffective by failing to raise an issue, we use the following two part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Biehgler*, 690 N.E.2d at 194. However, no deficient performance will be found where appellate counsel's election of issues presented was reasonable in light of the facts of the case. *Id.* Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). Appellate advocacy is not ineffective for failure to present a meritless claim. *Stowers v. State*, 657 N.E.2d 194, 200 (Ind.Ct.App.1995), *trans. denied*.

We conclude that Govan did not receive ineffective assistance of appellate counsel because a vagueness challenge was not one which a reasonable attorney would have thought availing. Although Govan asserts that I.C. § 35-42-2-1(A)(3) is vague in light of A.H.'s purported consent, the underlying principle of the void-for-vagueness doctrine is that no person "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617

16

(1954). Here, the statute clearly provides a person of ordinary intelligence with fair notice that battery with a deadly weapon is prohibited under the statute. Claiming that consent, which is not even a defense under these circumstances, is incompatible with the elements of the statute, is a far cry from arguing that the elements of the crime are so vague that Govan could not know that his conduct was prohibited. We cannot therefore say that appellate counsel was ineffective for declining to raise this issue.

## 2. *Failure to Supply Record on Appeal*

Govan also alleges that his appellate counsel was ineffective for failing to provide portions of the transcript on appeal. Although appellate counsel did not provide jury instructions on direct appeal, Govan now argues that his appellate counsel's purported failure waived any argument that the jury should have been instructed as to A.H.'s consent. However, consent is not an available defense to the crime of battery with a deadly weapon. *See Govan*, 913 N.E.2d at 242-43. Thus, we cannot agree that appellate counsel's purported failure to provide a record containing jury instructions on direct appeal constituted ineffective assistance. *See Vaughn v. State*, 559 N.E.2d 610, 615 (Ind. 1990).

## 3. *Other Issues*

Govan also contends that his appellate counsel was ineffective for failing to raise on direct appeal the same issues that he contends that his trial counsel should have challenged. Specifically, Govan asserts that appellate counsel should have raised trial counsel's failure to tender jury instructions, challenged alleged prosecutorial misconduct, and contested the allegedly improper comments from the trial court. Further, because his

17

trial counsel represented him on direct appeal, counsel "had a duty to inform [Govan] concerning the conflict of presenting [these] issues." (Appellant's Br. p. 22).

We have already determined Govan's trial counsel was not ineffective for failing to raise any of these issues. Where a petitioner did not receive ineffective assistance of trial counsel, he can neither show deficient performance nor resulting prejudice as a result of his appellate counsel's failure to raise the same arguments on appeal. *See Davis v. State*, 819 N.E.2d 863, 870 (Ind. Ct. App. 2004), *trans. denied*. We therefore conclude that Govan has not met his burden to prove that his appellate counsel was ineffective.

### IV. *Indiana Post-Conviction Rule 1, §9(b)*

Finally, Govan raises a procedural claim regarding the post-conviction proceedings. Specifically, Govan contends that the post-conviction court improperly denied his request for an evidentiary hearing and abused its discretion by proceeding by affidavit. Govan asserts that he should have been given the opportunity to present evidence at an evidentiary hearing where he could have subpoenaed A.H. and the police detective who interviewed her.

Indiana Post-Conviction Rule 1, § 9(b), in relevant part, provides that:

In the event petitioner elects to proceed *pro se*, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the *pro se* petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds

18

the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

If a petitioner proceeds *pro se*, as Govan did, the post-conviction court may at its discretion determine that the cause should be submitted by affidavit. Under Rule 1 § 9(b), it is the post-conviction court's prerogative to determine whether an evidentiary hearing is required. *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*. Here, the issues raised by Govan were matters of law or otherwise capable of resolution through the trial record. Consequently, we cannot say that the post-conviction court abused its discretion by declining to hold an evidentiary hearing and ordering the case to proceed by affidavit.

## CONCLUSION

Based on the foregoing, we conclude that Govan did not receive ineffective assistance of trial or appellate counsel. Further, we conclude that the post-conviction court did not abuse its discretion by ordering the cause to be submitted upon affidavit.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur