Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSAN D. RAYL**
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TREMAYNE TERRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-CR-1072 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jeffrey Marchal, Master Commissioner
Cause No. 49G06-1309-FC-056935

**August 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Tremayne Terry appeals his convictions for Class C felony burglary and Class D felony theft. He argues that there is insufficient evidence to support Steve Jefferson's identification of him as the person who burglarized his house. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

On August 26, 2013, Steve Jefferson checked on his investment property at 221 West 37th Street in Indianapolis. The property had been vacant since at least 2006, and Jefferson had been experiencing problems with vandalism. Jefferson looked in the detached garage and then entered the house through the back door. When Jefferson left that day, he locked the back door but did not lock the service door to the garage.

The next day, August 27, Jefferson returned to check on his property around 8:00 p.m. It was still daylight at the time. As he was driving to his property from downtown Indianapolis, Jefferson saw four men—two younger and two older, one of whom he recognized from the neighborhood—near an alley on West 36th Street. Jefferson made eye contact with all four men. Instead of turning north into the alley to reach his property, Jefferson drove past the alley, turned north onto Graceland Avenue, and then turned east onto 37th Street. As Jefferson planned to turn into the alley next to his house, he observed the two older men he had just seen—both wearing white t-shirts—standing at the edge of the alley next to his house. Instead of turning into the alley next to his house, Jefferson drove around the block and turned into the alley from the other direction and stopped his

car by his garage. The two older men were still standing at the edge of the alley by his house and facing him from about ten feet away. At this point, Jefferson remotely opened his garage door. The two older men, who appeared to be nervous, started looking back and forth between Jefferson and his house. Then, the two younger men Jefferson had seen in the group of four exited the back door of his house. They were "facing" him when they exited his house. Tr. p. 32. One of the younger men stepped into Jefferson's garage[1] temporarily, came out, and then both younger men "took off." *Id.*

The young man who exited the house and briefly entered the garage wore a dark tank top. Jefferson was able to observe him for five to six seconds. *Id.* at 34. The other young man wore a white t-shirt. Jefferson was able to observe him for three to five seconds. *Id.* The young man in the white t-shirt carried two boxes of window grates. Jefferson said it looked like the young man in the dark tank top was carrying something, but he did not know what it was.

Jefferson drove to the end of the alley and called 911. While Jefferson was on the phone with the 911 operator he saw the two younger men who had exited his house, for a third time, at Graceland and 37th heading north on Graceland. The two younger men, who were carrying nothing at this point, rejoined the two older men. Jefferson relayed the quartet's direction of travel and a description of their clothing to the 911 operator. While Jefferson was still on the phone with the 911 operator, a police officer pulled up, so Jefferson got off the phone.

---

[1] The service door to Jefferson's garage is about two feet from the back door of his house.

Within minutes an officer found four men matching Jefferson's description walking near Community Spirits, a liquor store at 38th and Capitol Streets.

Less than fifteen minutes after Jefferson had first seen the four men and approximately five minutes after he had seen the men regroup, a police officer drove Jefferson to the parking lot at Community Spirits, where twelve to fifteen men were standing around, for a show-up identification. It was still light out at the time. Even before the patrol car came to a stop, Jefferson was able to identify the two younger men and the older man he recognized from the neighborhood. Jefferson, however, was not able to identify the fourth man. The men were wearing the same clothes as before. Jefferson identified the younger man in the white t-shirt as Tremayne Terry and the younger man in the dark tank top as his codefendant, Dontae Chamberlain. *Id.* at 76. Jefferson was "[a] hundred and ten percent sure" in his identifications. *Id.* at 52.

After the burglary and theft Jefferson walked through his house with an officer and observed missing property as well as damaged property. When he walked in his house, Jefferson immediately noticed that no music was playing, because he kept a radio on in order to make it appear as if someone lived there. However, the radio was missing. The back door to his house was "busted." *Id.* at 42; Ex. 8-10. In addition, the alarm system was "ripped out of the wall," and window grates, which Jefferson was going to install because of recent vandalism to the house, were missing. Tr. p. 42. Part of the alarm system was found in the garage near the door where Chamberlain had been standing, but the rest of the property was never found.

4

The State charged Terry with Class C felony burglary and Class D felony theft. Following a bench trial, Terry was convicted as charged. The trial court explained that this case could be distilled down to "identification and credibility." *Id.* at 275. The court found most convincing that "this whole scenario from the time of the 911 call until the point where the co-defendants were identified by name was fourteen minutes. Actually it was a little less." *Id.* In addition, the court found Jefferson to be a credible eyewitness—and more credible than the defense witnesses. *Id.* The court sentenced Terry to an aggregate term of two years.

Terry now appeals.

**Discussion and Decision**

Terry contends that the evidence is insufficient to prove that he was one of the men who exited Jefferson's house. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the judgment. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.* A reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla. *Id.* Where a defendant's conviction is based upon his identification as the perpetrator by a sole

5

eyewitness, such identification is sufficient to sustain a conviction if the identification was unequivocal. *Gorman v. State*, 968 N.E.2d 845, 848 (Ind. Ct. App. 2012) ("The reliability of particular evidence must be gauged by the fact-finder, not this court. Any potential errors in eyewitness identification must be resolved during trial, not on appeal."), *trans. denied.*

Terry argues that Jefferson's identification of him was "suspect" because Jefferson's opportunity to observe him was "quite brief, from inside a car, and at a distance." Appellant's Br. p. 7. These arguments, however, are merely requests to reweigh the evidence. The record shows that Jefferson saw Terry and the other men several times in the moments surrounding the burglary and theft. Jefferson made eye contact with Terry in the alley before Jefferson knew what was happening. Soon thereafter, Jefferson witnessed Terry exit the back door of his house carrying two boxes of window grates. Jefferson saw Terry for three to five seconds. Jefferson then saw Terry, for a third time, heading north on Graceland when he was on the phone with the 911 operator. Jefferson then identified Terry a short five minutes later, when it was still light out, in the parking lot of Community Spirits. This evidence is sufficient to prove that Terry is the man Jefferson saw leaving his burglarized house carrying his window grates. Although Terry argues that Jefferson allegedly told dispatch that Terry was wearing black shorts, *see* Def.'s Ex. A, but Terry was actually wearing black sweatpants that ended above his ankles when

he was apprehended, *see* State's Ex. 18, we also find that this is a request to reweigh the evidence. We therefore affirm Terry's convictions for burglary and theft.[2]

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

[2] To the extent that Terry argues that the show-up identification was unduly suggestive, we find nothing unduly suggestive about the show-up in this case. *See Mitchell v. State*, 690 N.E.2d 1200, 1204 (Ind. Ct. App. 1998) (listing several factors to consider when determining whether a show-up was permissible, including the witness's opportunity to view the criminal, the distance between the witness and the criminal, the lighting conditions, and the length of time between the commission of the crime and the show-up), *reh'g denied*, *trans. denied*. Moreover, we note that defense counsel did not object to Jefferson's in-court identification of Terry. *See* Tr. p. 35. It is well settled that when a witness had an opportunity to observe the perpetrator during the crime, a basis for an in-court identification exists, independent of the propriety of the pretrial identification. *Hale v. State*, 976 N.E.2d 119, 124 (Ind. Ct. App. 2012).