# FOR PUBLICATION



**FILED**

Jan 24 2013, 9:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID BECSEY**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DIANO L. GORDON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1205-CR-242 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
The Honorable Teresa Hall, Commissioner
Cause No. 49F18-1112-FD-90223

**January 24, 2013**

**OPINION - FOR PUBLICATION**

**MATHIAS, Judge**

Diano Gordon ("Gordon") was convicted in Marion Superior Court of Class D felony attempted residential entry and Class D felony escape. Gordon appeals his convictions and raises two issues, which we restate as:

I. Whether the admission of an eyewitness's identification testimony constituted fundamental error where the in-court identification arose from a show-up identification on the date of the crime; and,

II. Whether Gordon's escape conviction should be reduced to unauthorized absence from home detention by application of the rule of lenity.

We affirm.

**Facts and Procedural History**

On December 28, 2011, at approximately 12:00 p.m., Jodi Pearce ("Pearce") heard a loud banging sound coming from an adjacent home owned by Brandon Switzer ("Switzer"). When Pearce looked out her window towards Switzer's home, she saw two men hiding around the corner at the back of Switzer's home. The men then returned to the back door of Switzer's home and began kicking the door.

Pearce called 911 to report an attempted break-in at her neighbor's home. Pearce watched as the men walked away from Switzer's home and down the driveway. At that point, she got a good look at their faces for several seconds. She then ran outside to observe which direction they were walking and yelled, "I saw you." Tr. p. 17. One man replied, "we didn't do nothing" and the other said "let's go." Id.

Pearce got into her vehicle to follow the men, but encountered a responding police officer shortly thereafter. As officers began to search for suspects, the responding officer

went to Switzer's home with Pearce and observed damage to the back door and the window beside the door.

Within an hour, officers obtained information that led them to conclude that Gordon was a suspect in the attempted break-in. A detective asked Pearce to accompany him and participate in a "show up" identification. Tr. p. 71. The detective transported Pearce to Gordon's residence where Gordon was standing outside. Pearce immediately identified Gordon as the shorter of the two men that she saw attempting to enter Switzer's home.

At the time, Gordon had an electronic monitoring bracelet on his ankle as a condition of home detention. Records from the device established that Gordon left his home at 12:00 p.m. and returned at 12:10 p.m.

Gordon was subsequently charged with Class D felony attempted residential entry and Class D felony escape. He waived his right to a jury trial, and a bench trial commenced on March 14, 2012, and continued on March 21, 2012. At trial, Pearce testified that when she saw Gordon standing outside his home, she knew "immediately" that Gordon was one of the two men that attempted to break into Switzer's home, and there "was no question in [her] mind." Tr. p. 26. Gordon did not object to Pearce's identification testimony.

Gordon was convicted as charged and ordered to serve concurrent terms of two years for each conviction. Gordon now appeals. Additional facts will be provided as necessary.

## I. Identification Testimony

Gordon argues that the "show up" identification procedure was unduly suggestive, and therefore, admission of Pearce's testimony identifying Gordon constitutes fundamental error. The admission or exclusion of evidence falls within the sound discretion of the trial court, and its determination regarding the admissibility of evidence is reviewed on appeal only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Doolin v. State, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012), trans. denied.

The Fourteenth Amendment's guarantee of due process of law requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive. Harris v. State, 716 N.E.2d 406, 410 (Ind. 1999). But the claim may be waived for the purposes of appeal where the defendant fails to object on the grounds that the evidence was improperly admitted. Brown v. State, 783 N.E.2d 1121, 1126 (Ind. 2003).

Gordon failed to object to the admission of the evidence concerning the show-up identification but attempts to avoid waiver by invoking the fundamental error doctrine. The fundamental error doctrine is extremely narrow. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). The doctrine "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." McQueen v. State, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

4

"The United States Supreme Court and the Indiana Supreme Court have both condemned the practice of conducting a one-on-one show-up because of its inherent suggestiveness," but "identification evidence gathered via a show-up procedure is not subject to a per se rule of exclusion." Mitchell v. State, 690 N.E.2d 1200, 1203 (Ind. Ct. App. 1998) (citations omitted), trans. denied. Rather, the admissibility of a show-up identification turns on an evaluation of the totality of the circumstances and whether they lead to the conclusion that the confrontation was conducted in a manner that could guide a witness into making a mistaken identification. Id. Our courts consider the following factors in evaluating the admissibility of a show-up identification:

> (1) the opportunity of the witness to view the criminal at the time of the crime,
> (2) the length of initial observation of the criminal,
> (3) lighting conditions,
> (4) distance between the witness and the criminal,
> (5) the witness's degree of attention,
> (6) the accuracy of the witness's prior description of the criminal,
> (7) the level of certainty demonstrated by the witness, and
> (8) any identifications of another person.

Id. at 1204 (citations omitted). The length of time between the commission of the crime and the show-up procedure should also be considered because our supreme court has recognized "'the value of permitting a witness to view a suspect while the image of the perpetrator is fresh in the witness's mind.'" Id. (quoting Wethington v. State, 560 N.E.2d 496, 501 (Ind. 1990)).

At trial, Pearce testified that at approximately 12:00 p.m., she heard loud noises coming from the house next door and looked out of her window to determine the cause. Pearce observed two men standing underneath the carport of her neighbor's home.

5

Pearce continued to watch as the two men walked up to her neighbor's home and began kicking the door. Pearce called 911 and continued to watch as the men walked toward the front of her neighbor's house. The men then walked down her neighbor's driveway and into the street. Pearce ran outside to report to the 911 operator which direction the men were walking. She yelled at them "I saw you." Tr. p. 17. One shouted back that they had not done anything and the other said "hey let's go." Id. Pearce lost sight of the men after they crossed the street and walked behind a home on the opposite side of the street.

Pearce's description of the suspects to the police was two black men wearing sweatshirts with hoods covering their heads. One was tall and very thin, and the other man was shorter and his hair was in dreadlocks. Approximately one hour after Pearce called 911, a detective asked Pearce if she could identify the person kicking the door. Pearce stated that she could, and the detective transported Pearce to a nearby home in her neighborhood. The detective parked his car at the end of the driveway, and Pearce saw a man, later identified as Gordon, standing outside the home. She stated that she recognized him because he had the same build as the person kicking the door and his hair "stands out very well." Tr. p. 25. Pearce also stated that "he stared in a way of such arrogance and I mean he stood out from the other kid. . . . I saw the man with the hair and the same build . . . I knew immediately that it was him. There was no question in my mind." Tr. p. 26.

Pearce observed Gordon for several minutes in the middle of the day at a fairly close distance. Furthermore, her attention was focused solely on Gordon and his

6

companion for that length of time. And Pearce was absolutely certain that Gordon was the man kicking her neighbor's door. Under these facts and circumstances, we cannot conclude that the show-up identification was unduly suggestive.

Gordon also failed to object to Pearce's in-court identification of him. See Tr. p. 23. "It is well-settled that when a witness had an opportunity to observe the perpetrator during the crime, a basis for an in-court identification exists, independent of the propriety of pretrial identification." Hale v. State, 976 N.E.2d 119, 124 (Ind. Ct. App. 2012) (citations omitted). Pearce watched Gordon attempt to break into her neighbor's home and observed him as he left the scene; therefore, there was an independent basis for the in-court identification. Thus, even if we were to conclude that the trial court erred by admitting evidence of the show-up identification, Gordon's claim of fundamental error would fail under these circumstances.

## II. The Escape Conviction

Gordon notes that he was serving home detention as a condition of probation, and therefore, under the rule of lenity, his escape conviction should be reversed and reduced to Class A misdemeanor unauthorized absence from home detention. In support of his argument, Gordon relies on Brown v. State, 894 N.E.2d 598 (Ind. Ct. App. 2008), which addressed the relationship between the escape statute and unauthorized absence from home detention statute.

Initially, we observe that "[t]he rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused, . . . but statutes 'are not to be overly narrowed so as to exclude cases they fairly

7

cover[.]'" Meredith v. State, 906 N.E.2d 867, 872 (Ind. 2009) (citations omitted).

However, the rule of lenity does not apply when the court is faced with "two specific

statutes, which are not ambiguous." Schnepp v. State, 768 N.E.2d 1002, 1007 (Ind. Ct.

App. 2002), trans. denied. That is the situation before this court.

Indiana Code section 35-44.1-3-4 defines the offense of Class D felony escape in

part as: "[a] person who knowingly or intentionally violates a home detention order or

intentionally removes an electronic monitoring device or GPS tracking device[.]"[1]

Indiana Code section 35-38-2.5-13 provides that an offender who

> (1) leaves the offender's home in violation of section 6(1) of this chapter or
> without documented permission from the supervising entity;
> (2) remains outside the offender's home in violation of section 6(1) of this
> chapter or without documented permission from the supervising entity; or
> (3) travels to a location not authorized under section 6(1) of this chapter or
> not authorized in writing by the supervising entity;
>
> commits unauthorized absence from home detention, a Class A
> misdemeanor.[2]

In Brown, the defendant who was charged with escape, argued the jury should

have been instructed on the offense of unauthorized absence from home detention. Our

court concluded that section 35-38-2.5-13 applies only in cases where the offender has

been placed on home detention as a condition of probation, and therefore, we rejected

Brown's claim because he was not serving home detention as a condition of probation.

---

[1] In 2012, Indiana Code section 35-44.1-3-4 replaced former Indiana Code section 35-44-3-5, but the text of the escape statute at issue in this appeal was not changed.

[2] Indiana Code section 35-38-2.5-6(1) requires offenders to remain confined in their home at all times but
[2] Indiana Code section 35-38-2.5-6(1) requires offenders to remain confined in their home at all times but does provide for certain exceptions. For example, an offender may leave home to work if the employment is approved by the court.

Instead, Brown was serving an executed sentence on home detention through Marion County Community Corrections. See Brown, 894 N.E.2d at 600-01 (quoting Hildebrandt v. State, 770 N.E.2d 355, 360 (Ind. Ct. App. 2002), trans. denied) ("An 'executed sentence' is one that is actually served in a correctional facility, or other alternative correctional program, such as work release or home detention as opposed to a suspended sentence or sentence of probation.").

Gordon observes that unlike the offender in Brown, he was serving home detention as a condition of probation, and therefore, he argues, the rule of lenity requires that his conviction be reversed and reduced to Class A misdemeanor unauthorized absence from home detention. But as noted by Judge Baker in his separate concurring opinion in Brown: "the General Assembly crafted this legislative scheme in an effort to provide flexibility to prosecutors in charging the crime and to juries in crafting a verdict." Id. at 601. Furthermore, Judge Baker specifically addressed Brown's rule of lenity argument and concluded that the escape and unauthorized absence from home detention statutes "at issue herein are specific and unambiguous; consequently, the rule of lenity does not apply." Id.

In the instant case, the two statutes are unambiguous. Both statutes put the offender on notice of the conduct that will result in a Class D felony escape conviction or a Class A misdemeanor unauthorized absence from home detention conviction. It was within the prosecutor's discretion to determine which charge was warranted by Gordon's conduct. For all of these reasons, we reject Gordon's argument that his escape conviction should be reversed by application of the rule of lenity.

**Conclusion**

The admission of Pearce's show-up and subsequent in-court identifications of Gordon did not amount to fundamental error because the show-up procedure was not unduly suggestive.  We also conclude that the rule of lenity does not apply in this case, and therefore, we affirm Gordon's Class D felony escape conviction.

Affirmed.

KIRSCH, J., and CRONE, J., concur.