**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**AMY D. GRINER**
Griner & Company
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HERIBERTO M. ANDRADE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1307-CR-289 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
Cause No. 20C01-0611-FA-95

**February 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Heriberto M. Andrade appeals his conviction of Dealing in Cocaine Weighing Three Grams or More,[1] as a class A felony, and two counts of Dealing in Cocaine,[2] both as class B felonies. Andrade also appeals the sentence he received for those convictions. He presents the following restated issues for review:

1. Was the out-of-court identification of Andrade impermissibly suggestive?

2. Did the trial court abuse its discretion in finding improper aggravating circumstances?

3. Was Andrade's sentence inappropriate in light of his character and the nature of his offenses?

We affirm.

The facts favorable to Andrade's convictions are that, on November 9, 2006, officers of the Elkhart County Interdiction and Covert Enforcement Unit (ICE) arranged with a confidential informant (CI) to make a controlled-buy purchase of cocaine at 1313 South Ninth Street in Goshen, Indiana. The CI drove Officer Gorball to the Ninth Street address. After they arrived, the CI went to the door of that residence, knocked, and then returned to the vehicle. Andrade eventually came out to the CI's vehicle and, standing outside the vehicle and with his face in Officer Gorball's view, said he had a gram to sell. Andrade then handed the CI .68 grams of cocaine in a baggie. Officer Gorball gave Andrade $40 in marked money. The CI drove away. Shortly thereafter, Detective Jeffrey Eaton of the

---

[1] Ind. Code Ann. § 35-48-4-1(b)(1) (West, Westlaw current through 2013 First Regular Sess. and First Regular Technical Sess.).
[2] I.C. § 35-48-4-1(a)(1)(C).

2

Elkhat Police Department showed Officer Gorball a photograph of Andrade from the Indiana Bureau of Motor Vehicles (BMV), and Gorball identified the man as the one who had just sold him cocaine.

On November 14, 2006, using the same CI, Officer Gorball arranged for a second controlled buy from Andrade at the Ninth Street address. Following the same procedures as in the first buy, the two again drove to the Ninth Street address, where the CI exited the vehicle and knocked on the same apartment door as before. Officer Gorball watched the ensuing transaction from a distance of between ten and twenty yards. The officer recognized the dealer in this instance as the same man who sold cocaine on November 9. The CI returned to the vehicle with 2.77 grams of cocaine. Once again, Officer Gorball identified Andrade from the same BMV photo he had examined after the first controlled buy.

On November 20, 2006, Detective Michael Carich of the Elkhart County Sheriff's Department worked with the same CI to make a third controlled by from the Ninth Street apartment. The CI telephoned Andrade, who instructed him to come to the Ninth Street apartment. Detective Carich drove the CI to that address, whereupon the CI exited the vehicle and knocked on the apartment door. He went upstairs to speak with Andrade, after which the CI and Andrade returned to the car. The CI reentered the car and sat down, while Andrade walked up to the passenger-side door. Detective Carich turned on the interior lights so he could count $200 and show it to Andrade. Andrade leaned into the window, Detective Carich handed him $200, and Andrade delivered 4.79 grams of cocaine in two baggies to Detective Carich. Later that evening, Detective Carich identified Andrade from the same

BMV photo that Officer Gorball had used to identify him in the two earlier controlled buys.

In connection with the foregoing transactions, Andrade was charged with three counts of dealing cocaine, one as a class A felony and two as class B felonies. Following a jury trial, Andrade was convicted as charged. Following a hearing, the trial court sentenced Andrade to forty years for the class A felony conviction and fifteen years for each of the class B felony convictions, all to be served concurrently, for a total executed sentence of forty years.

1.

Andrade contends the pretrial identification procedures utilized by both Officer Gorball and Detective Carich were impermissibly suggestive, and violated his due process rights. Andrade contends:

> the State's only evidence identifying Andrade as the man who delivered cocaine were two undercover officers who were shown a single photo from the Indiana Bureau of Motor Vehicles, with Andrade's name preprinted at the top. Since the identification process was unnecessarily suggestive, undermining confidence in the accuracy of the identification, the testimony of the out-of-court identification was improperly admitted and violated Andrade's due process rights.

*Appellant's Brief* at 6.

The due process guarantee under the Fourteenth Amendment requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive. *Gordon v. State*, 981 N.E.2d 1215 (Ind. Ct. App. 2013). Such a claim may be waived on appeal, however, where the defendant fails to object on grounds that the evidence was improperly admitted. *Id.*

4

Andrade failed to object when Officer Gorball and Detective Carich identified him at trial, and also failed to object to the admission of the BMV photograph they used to identify him shortly after the buys were completed. Moreover, Andrade makes no argument that the error was fundamental and therefore not subject to waiver. *See id.* Accordingly, this argument is waived. *Id.*

2.

Andrade contends the trial court identified improper aggravating circumstances and failed to identify a proper mitigating circumstance. Specifically, Andrade claims the trial court abused its discretion in failing to find that his daily use of marijuana, i.e., his substance addiction, is a mitigating factor.

The identification of aggravating and mitigating circumstances at sentencing rests within the sound discretion of the trial court. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* at 491 (quoting *K.S. v. State,* 849 N.E.2d 538, 544 (Ind. 2006)). A trial court may abuse its sentencing discretion in several ways, including the failure to cite significant mitigating factors and the identification of improper aggravating circumstances. *Anglemyer v. State,* 868 N.E.2d 482. To prevail on a claim pertaining to mitigators, a defendant must establish that the excluded mitigating circumstances are both significant and clearly supported by the record. *Id.* A sentencing court is not obligated to find a circumstance to be mitigating merely because it is

advanced as such by the defendant, nor is it required to explain why it chose not to make a finding of mitigation. *Healey v. State,* 969 N.E.2d 607 (Ind. Ct. App. 2007), *trans. denied.* Also, a trial court does not abuse its discretion in failing to find a mitigating factor that is highly disputable in nature, weight, or significance. *Id.*

By his own admission, Andrade began using marijuana on a daily basis when he was fourteen years old. He continued to do so until, he claimed, six months prior to his arrest for the present offense. Of course, this activity was illegal when he engaged in it. This fact might underpin the conclusion of some courts that substance abuse is actually an aggravating circumstance. *See id.* Regardless, we can find no indication that his offenses in the present case were committed *because* he was then under the influence of marijuana, or any other substance. The trial court did not abuse its discretion in failing to find his history of substance abuse as a significant mitigating circumstance.

Andrade next claims the trial court abused its discretion in finding as aggravating circumstances his criminal history and his legal status as a permanent resident alien. Beginning with the latter, Andrade correctly notes that a court cannot treat a defendant more harshly on the basis of national origin or alien status. *See*, *e.g.*, *Delao v. State*, 940 N.E.2d 849 (Ind. Ct. App. 2011), *trans. denied.* Although the trial court's comments appear to have identified Andrade's permanent resident status as an aggravator, it is not clear in what manner the court considered this as an aggravating circumstance. Perhaps it was in response to comments made by defense counsel while arguing on Andrade's behalf during the sentencing hearing. Counsel stated:

6

> Your Honor, Mr. Andrade is a permanent resident here in the United States; however, my understanding, although I am not an immigration lawyer, [is] that he would probably be deported upon his release from the department of corrections. He is not suspendable as he does have a prior felony and that is for resisting law enforcement as a D.

*Transcript* at 235-36.

After identifying Andrade's age (29) at the time of the commission of these offenses as "weighing in favor of Mr. Andrade", the court briefly discussed his criminal history. *Id.* at 240. Following that discussion, the court stated, "While the defendant has permanent resident status in the United States, it appears that these convictions may subject him to the civil remedy of deportation. Those factors the Court will weigh against the factors weighing in favor of Mr. Andrade." *Id.* at 241. It is not clear to us how the court considered his residency status as an aggravator, or perhaps even whether it did at all. Nevertheless, even assuming that the court improperly identified this as an aggravating circumstance, such does not compel reversal or remand. Even where the trial court cites an improper aggravating circumstance, we are required to remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer v. State,* 868 N.E.2d at 491.

The trial court found Andrade's criminal history as an aggravating circumstance. The court set out that criminal history as follows:

> My count is there are three misdemeanors, two infractions, and nine failures to appear, one prior felony, and the defendant used marijuana since age 14, perhaps daily use. Apparently, there is a disdain for the court system or laws. It's illegal in this country to use or possess marijuana in this state, and the nine failures to appear, ten counting what happened here when the five-year absence of Mr. Andrade occurred, indicates a clear disdain for the court

7

system.  We had his case ready to go to trial over five years ago, and we were unable to try it because he did not appear.  That's a serious consideration for this court.

*Transcript* at 240.  The discussion of Andrade's failure to appear alludes to the fact that after posting bond for the present offense, Andrade fled the jurisdiction for approximately five years.  It appears that he was finally apprehended in Edinburg, Texas and had to be transported back to Indiana to face trial on the present charges.  The trial court's summary of Andrade's criminal history finds support in the record.  In light of these factors and the trial court's comments, we are confident the trial court would have imposed the same sentence without respect to Andrade's permanent resident status.  Therefore, remand is not required.

3.

Andrade contends his sentence was inappropriate in light of his character and the nature of his offenses.  Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences.  Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task.  *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008).  Per Rule 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010).  "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  *Cardwell v. State*, 895 N.E.2d at 1223.  Andrade bears the burden on appeal of persuading us that his sentence is inappropriate.  *Childress v. State*, 848 N.E.2d 1073 (Ind.

2006).

The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d at 1224. Moreover, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Andrade was convicted of two class B felonies and one class A felony, all for dealing cocaine. The advisory sentence for a class A felony is thirty years; the maximum sentence is fifty years. Andrade received a sentence that was ten years above the advisory for this conviction. The advisory sentence for a class B felony is ten years; the maximum sentence is twenty years. Andrade received fifteen years, or five years above the advisory sentence, for each of the class B felonies, which were ordered to be served concurrently with the sentence for the class A felony. Therefore, Andrade received an executed sentence totaling forty years.

Considering the nature of the offense, Andrade was found guilty of selling cocaine on

three separate occasions, with the amount of cocaine involved escalating with each succeeding transaction. The State concedes that these offenses are not "exceedingly egregious." *Appellee's Brief* at 12.

We turn now to a consideration of Andrade's character. Andrade has used marijuana on almost a daily basis since he was fourteen years old. He has been convicted three times of possession of marijuana as well as three vehicle-related offenses. He has violated probation twice and has a lengthy history of failing to appear at court hearings. In the present case, he fled the jurisdiction for five years before he was apprehended and returned to Indiana to face trial. This history reflects a contempt for the rule of law and the authority of the court. Accordingly, we cannot find that the forty-year sentence is inappropriate in light of the nature of the offenses and Andrade's character.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.