

**FILED**

Dec 30 2019, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James C. McClernon, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 30, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-1305 <br><br> Appeal from the Vanderburgh <br> Circuit Court <br><br> The Honorable David D. Kiely, <br> Judge <br><br> The Honorable Kelli E. Fink, <br> Magistrate <br><br> Trial Court Cause No. <br> 82C01-1903-F5-1766 |

**Najam, Judge.**

## Statement of the Case

[1] James C. McClernon brings this interlocutory appeal from the trial court's denial of his motion to dismiss the State's charge against him for failing to register vehicle information, as a Level 5 felony.[1] McClernon raises a single issue for our review, namely, whether Indiana Code Section 11-8-8-8(a)(1)'s requirement that a sex offender register vehicle information for any vehicle the offender "operates on a regular basis" is void for vagueness. We hold that longstanding principles of statutory construction require the language at issue to be read under an objective reasonableness standard—that is, whether one operates a vehicle on a regular basis is to be determined by asking whether reasonable persons would know that McClernon's conduct put him at risk. Under that standard, the statutory language is not constitutionally deficient. Accordingly, we affirm the trial court's denial of McClernon's motion to dismiss.

## Facts and Procedural History[2]

[2] According to the State's probable cause affidavit:

> [McClernon, t]he suspect in this offense[,] is . . . a registered sex offender in Vanderburgh County, Indiana. The suspect was convicted of Sexual Assault . . . in Thunder Bay[,]

---

[1] The State alleged an enhanced offense based on a prior failure-to-register conviction.

[2] We held oral argument at Owen Valley High School on November 19, 2019. We extend our sincerest gratitude to the faculty, staff, and students for their hospitality. We also commend counsel for their excellent written and oral advocacy.

Canada[,] . . . [i]n Aug[ust] 2013. After serving his sentence[] there, he was required to register as a sex or violent offender upon his release. A review from the Indiana Department of Correction[] determined that the suspect's Canadian [o]ffense is equivalent to attempted Criminal Deviant Conduct[, as] a Class B felony[,] and that the suspect must register as a Sexually Violent Predator for life.

The suspect was also convicted for I.C. 11-8-8 failure to register as a sex or violent offender[] in the Vanderburgh County Court System . . . on 08-17-2016.

The suspect's signed and initialed Sex and Violent Offender Registration forms are on file[] and reflect that he has acknowledged his duties and obligations as a registered sex offender. A copy of the Indiana Sex Offender Registration Laws was also made available to him.

The suspect last registered with the Vanderburgh County Sheriff's Office [the "VCSO"] on the following dates: 01-25-2019, 02-04-2019, 02-13-2019, 02-22-2019, and 03-01-2019. On all of these dates the suspect did not report any vehicles, which is a duty and obligation as a registrant.

On 02-04-2019, after not registering a vehicle, VCSO Receptionist A. Nilssen observed the suspect leave the VCSO . . . and drive away in an older model red Chevy pick-up truck. . . .

On 02-06-2019, the suspect was stopped in a vehicle that matched the same vehicle that Nilssen observed him driving away in on 02-04-2019. . . . Officer N. Jones confirmed that the suspect was driving a suspected stolen vehicle and stopped him. [McClernon] stated that he had the truck for about [five] days and was using it to scrap for extra money. . . .

The suspect was observed driving away from the VCSO . . . on 02-04-2019 after not registering the vehicle[] and was stopped in said . . . vehicle on 02-06-2019 . . . and admitted that he was using it to scrap for about [five] days. This is a violation of I.C.[] 11-8-8-8.

On 03-08-2019, the suspect arrived [at] the VCSO . . . for his registration update. Upon arrival he was taken into custody . . . . Deputy Hatfield asked if the suspect wished to talk with him and the suspect agreed and signed a Miranda Warning acknowledging this.

The suspect stated to Deputy Hatfield that he was in fact utilizing the red Chevy truck . . . . The suspect advised that he received the vehicle from [a third party] on the Saturday before he was stopped in it. This date would have been 2-2-19. The suspect advised he was using the vehicle to help his ex[-]wife move items. The suspect advised he believed he was returning the vehicle after using it. The suspect advised the [person] who gave him the vehicle never answered his phone so the suspect could not return it. The suspect then advised he would proceed to continue to utilize the vehicle until he was stopped in it on 2-6-19. The suspect advised he used the vehicle to obtain money by scrapping metal, to transport him to places, as well as [to] sleep inside of it. The suspect further advised he used this vehicle to get him to the [VCSO] so that he could complete his Sex and Violent Offender Registry form on 2-4-19. The suspect advised[,] even though he was utilizing the vehicle at the time he completed his Sex or Violent Offender registration, he did not register the vehicle. The suspect made multiple admissions to Deputy Hatfield that he utilized the above vehicle multiple days before and after registering that he was not utilizing a vehicle. The suspect further admitted to using the above vehicle for personal [use] as well as monetary gains during this time.

Appellant's App. Vol. 2 at 12-13.

[3]     Based on those allegations, in March of 2019 the State charged McClernon with failing to register, as a Level 5 felony. In particular, the State alleged that McClernon had failed to register the vehicle information[3] for a vehicle that he "operates on a regular basis," as required by Indiana Code Section 11-8-8-8(a)(1) (2019), a provision of Indiana's Sex Offender Registration Act. McClernon moved to dismiss the charge on the ground that the vehicle-information registration requirement is void for vagueness as applied to him. The trial court denied McClernon's motion to dismiss. The court then certified its order for interlocutory appeal, which we accepted.

## Discussion and Decision

[4]     McClernon appeals the trial court's denial of his motion to dismiss. As the Indiana Supreme Court has stated:

> We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion and a trial court abuses its discretion when it misinterprets the law. A challenge to the constitutionality of a statute is a pure question of law, which we review *de novo*. All statutes are presumptively constitutional, and the court must resolve all reasonable doubts concerning a statute in favor of constitutionality. That being said, unlike the higher burden faced by those making a facial constitutional challenge, those challenging the statute as applied need only show the statute is unconstitutional on the facts of the particular case.

---

[3] This information includes the "vehicle description, vehicle plate number, and vehicle identification number." Ind. Code § 11-8-8-8(a)(1) (2019).

*State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017) (quotation marks, omissions, alterations, and citations omitted).

[5]   The issue in this appeal also involves questions of statutory interpretation. When interpreting a statute, our primary goal is to determine and give effect to the intent of the legislature. *Rodriguez v. State*, 129 N.E.3d 789, 796 (Ind. 2019). We must give effect to the plain and ordinary meaning of statutory terms, and there is a presumption that the legislature intended the statutory language to be applied logically and consistently with the statute's underlying policy and goals. *Id.*

[6]   A penal statute that is "so vague that men of common intelligence must necessarily guess at its meaning" violates "due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). As the Supreme Court of the United States has explained:

> It is a basic principle of due process that an enactment is void for
> vagueness if its prohibitions are not clearly defined. Vague laws
> offend several important values. First, because we assume that
> man is free to steer between lawful and unlawful conduct, we
> insist that laws give the person of ordinary intelligence a
> reasonable opportunity to know what is prohibited, so that he
> may act accordingly. Vague laws may trap the innocent by not
> providing fair warning. Second, if arbitrary and discriminatory
> enforcement is to be prevented, laws must provide explicit
> standards for those who apply them. A vague law impermissibly
> delegates basic policy matters to policemen, judges, and juries for
> resolution on an ad hoc and subjective basis, with the attendant
> dangers of arbitrary and discriminatory application. Third, but
> related, . . . uncertain meanings inevitably lead citizens to steer

far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (quotation marks, omissions, and footnotes omitted). And Justice Scalia wrote for the Court, "[t]he prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Johnson v. United States*, 135 S. Ct. 2551, 2556-57 (2015) (quotation marks omitted).

[7] But due process does not require perfect statutory precision. While a penal statute must "give a person of ordinary intelligence fair notice" of what is proscribed, we will "nullify a statute on constitutional grounds only where such result is clearly rational and necessary." *Morgan v. State*, 22 N.E.3d 570, 574 (Ind. 2014) (quotation marks omitted; emphasis removed). That "'there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls' . . . is not a 'sufficient reason to hold the language too ambiguous to define a criminal offense.'" *Id.* at 575 (quoting *Roth v. United States*, 354 U.S. 476, 491-92 (1957)). Where imprecise penal statutes are at issue, "a vagueness challenge based upon Due Process 'may be overcome in any specific case where reasonable persons would know that their conduct is at risk.'" *Id.* (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)). Thus, "principles of statutory interpretation instruct . . . to read a reasonableness

standard" into imprecise statutory language that might otherwise "lead to absurd results and exceedingly broad discretion in enforcement." *Id.* at 576.

[8] In *Morgan*, the Indiana Supreme Court held that Indiana's public-intoxication statute was not void for vagueness in its proscription of behavior that "annoys . . . another person." *Id.* at 576-77. The Court recognized that "[t]here is little doubt that the subjective application of the term 'annoys' would lead to absurd results and exceedingly broad discretion in enforcement." *Id.* at 576. The Court further acknowledged the defendant's argument that "reasonable people disagree as to what behavior is annoying . . . ." *Id.* at 574. But the Court held that the statutory language passed constitutional scrutiny by reading a reasonable-person standard into the term. *Id.* at 576-77. As the Court explained: "an objective reasonableness standard is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct, and it also provides a constraining and intelligible enforcement guideline for police and prosecutors." *Id.* (quotation marks omitted). Therefore, the Court concluded that "the application of a reasonableness standard to the term 'annoys' satisfies constitutional requirements." *Id.* at 577.

[9] We hold that the same must be true for Indiana's requirement that a sex offender register the information for a vehicle that he "operates on a regular basis." I.C. § 11-8-8-8(a)(1). We initially note a common dictionary definition for the word "regular," which, as that term is undefined in the Indiana Code, is the definition that best reflects our legislature's intent. *See Rainbow Realty Group, Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). "Regular" is not an

obscure term or a term of art. As commonly understood, it means "recurring" or "conforming" to a "normal or usual manner." *Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/regular (last visited Nov. 22, 2019). However, we agree with McClernon that those definitions alone do not resolve his vagueness challenge.

[10]     Indeed, like the statutory language before the Court in *Morgan*, there is little doubt that a subjective application of "operates on a regular basis" would "lead to absurd results and exceedingly broad discretion in enforcement." 22 N.E.3d at 576. And we acknowledge McClernon's argument that reasonable people may disagree as to what constitutes a "regular" use. But the statutory language at issue is not constitutionally deficient when interpreted under a reasonable-person standard. *See id.* at 575-77. The reasonable-person standard gives sex-offender registrants a baseline for determining potentially proscribed conduct, and it constrains police and prosecutors from engaging in willy-nilly enforcement. *Id.* at 576-77. Accordingly, imputing the reasonable-person standard into the vehicle-information registration requirement, McClernon was given sufficient notice of the potentially prohibited conduct, and neither arbitrary nor discriminatory enforcement is authorized or encouraged. *Id.* at 577.

[11]     And, here, a reasonable person would have considered McClernon's failure to register the information for the vehicle he operated to have put him at risk under the statute. According to the probable cause affidavit, McClernon operated the red Chevy truck for at least five consecutive days. He operated the

vehicle to help a third party move personal property; to scrap metal for his own financial gain; and to transport himself around, including to register himself with local law enforcement. This conduct, it could be argued, was not a mere occasional, infrequent, or incidental use. We express no opinion on whether those alleged facts, if proven, would be sufficient to convict McClernon of the alleged offense. But they do suffice to demonstrate that, as applied to him under the reasonable-person standard, Indiana Code Section 11-8-8-8(a)(1) was not "too ambiguous to define a criminal offense." *Id.* at 575.

[12] We also briefly address two federal cases referenced by McClernon on appeal. First, McClernon cites *Whatley v. Zatecky*, in which the United States Court of Appeals for the Seventh Circuit vacated an Indiana defendant's conviction for dealing within 1000 feet of a youth program center. The statutory language in *Whatley* defined a youth program center as any "building or structure that on a regular basis" provided certain programs or services for minors. 833 F.3d 762, 765 (7th Cir. 2016) (quoting I.C. § 35-41-1-29(a)).

[13] In agreeing with the defendant in *Whatley*, the Seventh Circuit held in relevant part as follows:

> the State argues that a person of ordinary intelligence would understand that the number of youth programs held at the Robinson Community Church were sufficient to render it a youth program center. This is essentially an argument that the church held so many programs that it would meet any definition of "regular," and that [the defendant's] case is in the core of the conduct prohibited by the statute. But four or six activities a week at a facility that is not otherwise identifiable as a youth

program center is nowhere near the core of the statute. Had [the defendant] possessed drugs within 1000 feet of a YMCA or a Boys and Girls Club, there would be no doubt that his conduct was within the core of the law. The State conceded in its argument to the Indiana Supreme Court that churches are not inherently places where children gather, and a handful of weekly events does nothing to provide fair notice or to discourage arbitrary enforcement of the statute.

We twice asked the State at oral argument how many events each week would qualify as "regular," so as to bring a facility within the limits of the law. The State twice responded, "four." But the State provided no basis for that arbitrary and convenient number, which coincidentally matched the minimum number of children's activities held at the Robinson Community Church each week. Without any standard in the statute, in a regulation, or in the Indiana case law, the completely subjective word "regular" invited arbitrary enforcement of this strict liability statute. *Grayned*, 408 U.S. at 108-09, 92 S. Ct. 2294 ("if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."). "The dividing line between what is lawful and unlawful cannot be left to conjecture." *Connally*, 269 U.S. at 393, 46 S. Ct. 126. But with the wording of Indiana's statute, a defendant must rely on little more than conjecture to determine what will transform an unmarked building used for some other purpose into a "youth program center."

*Id.* at 783 (footnote and record citation omitted).

[14] Second, McClernon relies on an order from the United States District Court for the Eastern District of Michigan in *Doe v. Snyder*. In *Doe*, the court found that Michigan's requirement that sex offenders register the information for any vehicle they "regularly operate" was void for vagueness. 101 F. Supp. 3d 672,

686-90 (E.D. Mich. 2015), *rev'd on other grounds*, 834 F.3d 696, 698-706 (6th Cir. 2016).[4]  In so finding, the court reasoned in relevant part as follows:

> the commonly accepted meaning of the terms "regularly" and "routinely" do not provide sufficient guidance to law enforcement or registrants to survive a due process challenge both generally and as applied to Plaintiffs.  The frequency and consistency with which Doe #1 must drive his employers' vehicles in order to trigger the registration requirement is unclear.  Likewise, it is ambiguous whether Doe #2's use of his girlfriend's car a few times a quarter constitutes regular use, particularly in light of the rule of lenity, and a reasonable person and well-intentioned law enforcement officer would struggle to determine whether Doe #4's occasional use of his mother's phone was "routine."  The ambiguity in the reporting requirements is further highlighted by officers' and prosecutors' responses to informal telephonic survey questions conducted by volunteers for Plaintiffs, law enforcement officers' answers to deposition questions, and law enforcement officers' guidance to Plaintiffs.

> Volunteers for Plaintiffs asked local law enforcement agencies and prosecutors' offices how often a registrant could use a vehicle before triggering SORA's reporting requirements.  "[S]ome respondents did not know the answer, and others provided answers ranging from once or twice, to six or seven times, to 'whatever is reasonable.'"  When asked during a deposition whether a registrant who used a vehicle once during a three-month period had to report the vehicle, the law enforcement officer testified, "That would be probably a judgment call by the prosecutor or the law enforcement agency."  He answered in the affirmative when asked if "each law enforcement agency might

---

[4]  The United States Court of Appeals for the Sixth Circuit reversed the district court's judgment on *ex post facto* grounds and without considering the void-for-vagueness issue.

come to a different conclusion about what regular use means." Furthermore, law enforcement told Doe #4 that "if he borrows a car more than three times he must immediately report in person," but such use does not clearly trigger SORA's reporting requirements. Similarly, a local police department informed Ms. Doe that she had to register a vehicle "if she was driving it or if it was parked in her driveway."

The disparate views of the meaning of the term "regularly use" exemplify the lack of a standardized guidelines for the enforcement of SORA's reporting provisions. . . .

*Id.* (record citations omitted; alterations in original).

[15] We do not find either *Whatley* or *Doe* persuasive. First, neither the Seventh Circuit's opinion nor the district court's order discusses imputing a reasonable-person standard into an imprecise penal statute, as the Indiana Supreme Court and Supreme Court of the United States have both done. *See Morgan*, 22 N.E.3d at 575-76 (discussing numerous cases). Second, the statutory language in *Whatley* involved whether a third party used a structure in a certain way on a "regular basis," which third-party activities might be unknowable to a defendant. That is in stark contrast to the statutory language here, which turns on how the defendant himself uses a vehicle, information of which the defendant is obviously aware. Third, McClernon presented no evidence in support of his motion to dismiss that is on par with the evidence of possible arbitrary enforcement that was submitted to the district court in *Doe*. Thus, we decline to follow *Whatley* or *Doe* and instead follow *Morgan*.

[16]     In sum, while the statutory requirement that a sex offender register the information for a vehicle he "operates on a regular basis" might appear to lack precision, whether one operates a vehicle on a regular basis is to be determined by asking whether reasonable persons would know that their conduct is at risk under the statute. Like the statutory language at issue in *Morgan*, the failure-to-register statutory language here is not void for vagueness. The reasonable-person standard provides sufficiently clear guidance to registrants and law enforcement of potentially proscribed conduct and, as such, passes constitutional scrutiny. *Id.* at 575-77. And, at the end of the day, whether particular conduct violates the statute must be determined by the fact-finder on a case-by-case basis. *E.g.*, *id.* at 577. Thus, the trial court did not err when it denied McClernon's motion to dismiss, and we affirm the trial court's judgment.

[17]     Affirmed.


Bailey, J., concurs.

Baker, J., dissents with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James C. McClernon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>19A-CR-1305 |

**Baker, Judge, dissenting.**

[18]     I respectfully dissent. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). And I believe that the statute under which McClernon was charged was vague enough to violate his due process rights.

[19]     From the record, we know that starting February 2, 2019, McClernon operated a red truck for five days to help his ex-wife move items, to transport him, to

obtain money by scrapping metal, to sleep in, and to drive to the Vanderburgh County Sheriff's Office to stay current on his sex offender registration requirements. McClernon was eventually arrested on March 8, 2019.

[20] Indiana Code section 11-8-8-8(a)(1) states, in pertinent part, that as a registered sex offender, McClernon must register vehicular information, which includes vehicle description, license plate number, and identification number, for any vehicle that he operates "on a regular basis[.]" It is this language—"on a regular basis"—that is at issue. What exactly does "on a regular basis" mean for purposes of statutory interpretation?

[21] The majority holds that any reasonable person in McClernon's position would have known that their conduct could be at risk for criminal prosecution under the registration statute. *See, e.g.*, *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). But the answer, in my opinion, is not so clear-cut. For the following three reasons, I would reverse the trial court.

[22] First, there is the rule of lenity. "The rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused[.]" *Meredith v. State*, 906 N.E.2d 867, 872 (Ind. 2009). At its core, this statute contains ambiguous language that both the trial court and this Court have had to grapple with. According to the rule of lenity, McClernon should not be penalized as a result of the ambiguity. And while statutes are not to be "overly narrowed so as to exclude cases they fairly cover," *Gordon v. State*, 981 N.E.2d 1215, 1219 (Ind. Ct. App. 2013), it is far from definitive that

McClernon's five-day stint in the vehicle constitutes behavior that falls under the ambit of statutorily proscribed conduct.

[23] Next, there is textualism. Justice Neil Gorsuch of the United States Supreme Court has elaborated on the void-for-vagueness doctrine and how it applies to criminal penal statutes from a textualist perspective:

> In even more extreme circumstances—when a statute is so ambiguous that a judge simply cannot divine its meaning consistent with the judicial role—textualists have long employed the void for vagueness doctrine as a backstop. In that case . . . if a judge cannot know whether or not a statute applies to certain conduct, then the party bearing the burden of persuasion must lose.

Neil Gorsuch et al., *A Republic, If You Can Keep It* 136-37 (2019). According to these textualist principles, the void-for-vagueness doctrine steps in when there is ambiguous statutory language. And because the State had the burden to prove that the language of "on a regular basis" applies to McClernon's actions, it must lose. In other words, textual ambiguities beget greater constitutional protections for criminal defendants.

[24] Finally, there is the statutory language itself. The majority cannot define what "on a regular basis" means for purposes of the registration statute as a whole because the ambiguity of that phrase could result in many divergent interpretations, definitions, and examples. While the majority does provide a common dictionary definition of the word "regular," it concedes that such a definition alone cannot resolve this vagueness challenge. Faced with this

overriding ambiguity, the majority pivots to the reasonable person standard to summarily conclude that any reasonable person would, of course, know that conduct like McClernon's was at risk for criminal prosecution. However, if the circumstances and individuals at play were different, would the majority arrive at the same result? Can we confidently say that a woman who drives her Oldsmobile to church just one day a week operates her vehicle "on a regular basis"? Are we sure that the sixteen-year-old teenager with a newly minted driver's license who practices his parking in the nearby school parking lot operates his vehicle "on a regular basis"? And what of the mother who drives her three children to school, soccer practice, and medical appointments? Can we classify her as someone who operates her vehicle "on a regular basis"?

[25] The majority dismisses the holdings from *Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016), and *Doe v. Snyder*, 101 F.Supp.3d 672 (E.D. Mich. 2015), *rev'd on other grounds*, 834 F.3d 696 (6th Cir. 2016), as unpersuasive because those cases did not impute the reasonable person standard and because their statutory language and record, respectively, are inapposite to those in this case. The majority correctly points out that our Supreme Court has imputed the reasonable person standard into other criminal statutes. *Morgan v. State*, 22 N.E.3d 570, 575-76 (Ind. 2014). But the *Whatley* and *Doe* Courts explained just how complicated it is to define the term "regular"—which, unlike *Morgan*, appears in the statutory language in both *Whatley* and *Doe*—and how such ambiguities affect the rights of criminal defendants. Instead of dismissing these cases as non-binding and extraneous, I advocate that we look to their holdings

as further proof that the answer is not as straightforward as the majority would suggest. Because of this vagueness and to safeguard McClernon's constitutional rights, I would reverse the trial court's denial of his motion to dismiss.

[26] Therefore, I respectfully dissent.