## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 13 2020, 5:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jefferson Billimon,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 13, 2020

Court of Appeals Case No.
19A-CR-1007

Appeal from the Vanderburgh
Circuit Court

The Honorable Michael J. Cox,
Magistrate

Trial Court Cause No.
82C01-1806-F4-4079

**Mathias, Judge.**

[1] Jefferson Billimon ("Billimon") was convicted in Vanderburgh Circuit Court of Level 4 felony unlawful possession of a firearm by a serious violent felon, two

counts of Level 5 felony intimidation, and two counts of Level 6 felony pointing a firearm. Billimon appeals his convictions and sentence raising two issues, which we restate as:

I. Whether Billimon's due process rights were violated by the show-up identification procedure; and,

II. Whether remand is necessary to correct the inconsistency between oral and written sentencing statements.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[2] On June 9, 2018, at approximately 9:00 p.m., Evan Riehle ("Evan") and James Dixey ("James"') were walking James's dog, Tiny. During the walk, Tiny urinated on a light pole. As they continued walking, Evan heard someone behind him. He turned around and saw Billimon walk toward them from the front porch of a house on South Elliott Street.

[3] Billimon pulled a gun from his waistband and pointed it at Evan and James. He cocked the gun and said, "That's disrespectful." Tr. Vol. II p. 38; Tr. Vol. III, pp. 104, 137. Billimon was upset that Tiny urinated in his yard. Billimon continued to point his gun at James and asked James to apologize. James apologized to prevent the situation from escalating. Evan and James then returned home where they called the police.

[4] The encounter with Billimon lasted two to three minutes. Both Evan and James gave a description of Billimon to the investigating officers. James stated that Billimon had "black or darker skin" and "matty" or "curly" hair. Tr. Vol. II, pp. 14–15. James informed the officer that Billimon had an accent and was wearing a dark colored shirt. Evan stated that Billimon had "[c]urly hair, dark complexion, maybe a Mexican" or black. Tr. Vol. II, p. 43. Evan said Billimon was 5'7" or 5'8" and "scrawny." *Id*. Evan also noted that Billimon had an accent.

[5] Evansville Police Department officers responded to the 911 call and proceeded to the residence on Elliott Street. Billimon's father, Jasper Billimon, spoke to the officers and stated that his son met the description of the man who threatened James and Evan with a gun. Billimon exited the home at the officers' request, and he was placed into custody for officer safety. Billimon was the only individual that exited the home that matched the description given by James and Evan.

[6] Approximately twenty to thirty minutes after Billimon threatened Evan and James, Evansville Police Department Detective Karin Montgomery arrived at James's home. She explained that she would drive him by a residence, and the man who threatened him would possibly be outside the residence. The detective then drove James to Billimon's house and parked her vehicle at the end of the alley. Two or three men were standing against a police vehicle next to a police officer. An assisting officer shined a light on the group to give James a better

view. James remained in the vehicle and identified Billimon as the man who threatened him.

[7] When James returned home, Evan and James were not permitted to speak to one another. The detective repeated the procedure with Evan and drove him to Billimon's house. Evan remained in the detective's vehicle. There were still two or three individuals standing against a car in the driveway of Billimon's house. An officer shined a light on the group allowing Evan to see their facial features. Evan identified Billimon as the man who pointed a gun at him. He also noted that Billimon had changed his clothes.

[8] After James and Evan identified Billimon, the officers began to search for the gun. Detective Michael Beitler searched the perimeter of the home and surrounding yard. He found a handgun lying against the fence of the property. Based on the handgun's condition, the detective did not believe that the gun had been lying against the fence for any significant length of time. Tr. Vol. 3, p. 193.

[9] On June 12, 2018, Billimon was charged with Level 4 felony unlawful possession of a firearm by a serious violent felon, two counts of Level 5 felony intimidation, and two counts of Level 6 felony pointing a firearm.[1] Prior to trial,

---

[1] Billimon was also charged with Level 5 felony carrying a handgun without a license, but this count was dismissed.

Billimon filed a motion to suppress any evidence of or derived from the "show-up" identification. The trial court denied the motion and found:

> [A]lthough such procedure is ordinarily disapproved, the Court has considered: the separation of the two complaining witnesses when they independently identified the suspect, the relatively short period of time between the incident and the identifications, the length of time and the opportunity to observe the suspect (distance and lighting) when the suspect was in the witnesses' presence, the witnesses' ability to observe and recollect particular characteristics of the suspect and their certainty of that recollection, and the presence of another individual or individuals next to the suspect when he was identified. Although law enforcement's procedure was arguably suggestive, under the totality of the circumstances, the Court finds that the identifications were sufficiently reliable.

Appellant's App. p. 8.

[10]    Jury trial commenced on February 19, 2019. During trial, over Billimon's objection, Evan and James unequivocally identified Billimon as the man who threatened him. Tr. Vol. 3, pp. 104, 143, 164.

[11]    Billimon's sentencing hearing was held on April 2, 2019. The trial court noted that Billimon's criminal history was a significant aggravating factor. In its oral sentencing statement, the trial court ordered Billimon to serve eight years in the Department of Correction, and the trial court ordered the sentence to be served consecutive to a sentence for a conviction in Spokane County, Washington. The written sentencing judgment ordered Billimon to serve eight years for each conviction regardless of the level of felony. Billimon now appeals.

## Show Up Identification

[12] Billimon argues the show up identification violated his due process rights. The Due Process Clause of the Fourteenth Amendment requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999). Such procedures are known as "show-up identifications." The admissibility of a show-up identification turns on an evaluation of the totality of the circumstances and whether the circumstances lead to the conclusion that the confrontation was conducted in a manner that could guide a witness into making a mistaken identification. *Gordon v. State*, 981 N.E.2d 1215, 1218 (Ind. Ct. App. 2013).

[13] Our courts consider the following factors in evaluating the admissibility of a show-up identification:

> (1) the opportunity of the witness to view the criminal at the time of the crime,
>
> (2) the length of initial observation of the criminal,
>
> (3) lighting conditions,
>
> (4) distance between the witness and the criminal,
>
> (5) the witness's degree of attention,
>
> (6) the accuracy of the witness's prior description of the criminal,
>
> (7) the level of certainty demonstrated by the witness, and
>
> (8) any identifications of another person.

*Id.*

[14] "Identifications of a freshly apprehended suspect have been held to be not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations because of the value of the witness's observation of the suspect while the image of the offender is fresh in his mind." *Rasnick v. State*, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013) (quotations omitted), *trans. denied*.

[15] However, Billimon argues that the show-up identification was impermissibly suggestive because Evan and James knew that law enforcement had a suspect in custody. And during the show-up identification, Billimon was in handcuffs and standing next to an officer. Billimon also claims that Evan's and James's identification of Billimon is unreliable because they could not determine whether he was African-American or Mexican. He observes that their descriptions of Billimon's hair were not identical. James stated that Billimon's hair was matted and curly, but Evan stated it was curly like a "big" Afro. Tr. Vol. II, pp. 14–15, 43; Tr. Vol. III, pp. 108, 151.

[16] But Billimon agrees that the altercation took place "while there was still some sun light," approximately fifteen feet "from a light pole which illuminated the area." Appellant's Br. at 12. Both Evan and James had an unobstructed view of Billimon during the altercation which lasted between two and three minutes. They were both focused on Billimon while he threatened them with his handgun.

[17]     Only thirty minutes after Billimon threatened them, Evan and James separately participated in the show-up identification, and both identified Billimon. Neither Evan nor James noticed that Billimon was in handcuffs. And Billimon was standing against a police car with an officer and two or three other men who also had dark complexions. Both Evan and James were confident in their identification of Billimon as the man who threatened them with a gun.

[18]     Under the totality of these circumstances, we conclude that the show-up identification was not impermissibly suggestive. And even if we were to conclude otherwise, Evan's and James's identifications of Billimon were reliable under these circumstances. Therefore, Billimon's due process rights were not violated when the trial court denied Billimon's motion to suppress and admitted evidence of the show-up identifications into evidence at trial.[2]

## Sentencing

[19]     From the trial court's statements during the sentencing hearing, we can reasonably assume that the court intended to impose an aggregate eight-year sentence to be served consecutive to the sentence imposed for an offense Billimon had been convicted of committing in Spokane County, Washington. However, the trial court's sentencing order imposes eight years for each conviction regardless of the level of felony. Appellant's App. p. 123. While

---

[2] Billimon also argues that Evan's and James's subsequent in-court identifications of him at trial were tainted by the impermissibly suggestive show-up identification procedure. Because we conclude that the show-up procedure was not unduly suggestive and Evan's and James's identifications of Billimon were reliable, we conclude the in-court identifications were also properly admitted.

eight years is a legal sentence for Billimon's Level 4 felony conviction, it is not a legal sentence for his Level 5 and Level 6 felony convictions. *See* Ind. Code §§ 35-50-2-5.5, -6, -7. Moreover, in its written sentencing order, the trial court ordered the eight-year sentence imposed for each conviction to be served consecutive to Billimon's sentence for his Washington offense. Appellant's App. p. 123.

[20] The parties agree that we should remand this case to the trial court to correct its sentencing order. *See* Appellant's Br. at 14–15, Appellee's Br. at 15. Remand is required to correct the illegal sentences and to clarify whether Billimon's sentences will run concurrent or consecutive to each other.

## Conclusion

[21] The show-up identification at issue did not violate Billimon's due process rights. However, the trial court's sentencing order requires correction and clarification. We therefore remand this case to the trial court for proceedings consistent with this opinion.

[22] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Robb, J., and Pyle, J., concur.